*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

★ ★ ★  ★ ★ ★

## OPINION

No. 04-10-00552-CR

Ryan **PRIHODA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 4, Bexar County, Texas
Trial Court No. 217408
Honorable Claude D. Davis, Judge Presiding

Opinion by:  Catherine Stone, Chief Justice

Sitting:  Catherine Stone, Chief Justice
Sandee Bryan Marion, Justice
Rebecca Simmons, Justice

Delivered and Filed:  August 31, 2011

AFFIRMED IN PART; REVERSED AND REMANDED IN PART

Ryan Prihoda was convicted of a second offense of driving while intoxicated.  On appeal, Prihoda contends: (1) he was deprived of his right to a fair trial, due course of law, and proper confrontation of the State's witness; (2) the evidence is legally insufficient; (3) the State failed to prove his prior conviction; and (4) the trial court abused its discretion in denying his motion to dismiss based on his right to a speedy trial.  We affirm the judgment of conviction; however we

reverse the trial court's judgment as to punishment and remand the cause for a new punishment hearing.

## WITNESS TESTIMONY

The arresting officer, Officer Mark Anthony Salazar, was the only witness who testified at trial. Prihoda's first and second points of error relate to Officer Salazar's testimony.

The State contends that Prihoda's first point of error is multifarious. We agree. Prihoda's complaint is multifarious because it is based on more than one legal theory and raises more than one specific complaint. *See Davis v.* State, 329 S.W.3d 798, 820 (Tex. Crim. App. 2010), *petition for cert. filed*, ___ U.S.L.W. ___ (U.S. Apr. 12, 2011) (No. 10-10063); *Mays v. State*, 318 S.W.3d 368, 385 (Tex. Crim. App. 2010), *cert. denied*, 131 S.Ct. 1606 (2011). In the actual point of error, Prihoda contends that Officer Salazar's inability to recall the events leading to Prihoda's arrest: (1) deprived him of his right to a fair trial and due course of law; and (2) deprived him of proper confrontation of the State's witness as constitutionally guaranteed. In his briefing of this point of error, Prihoda asserts that Officer Salazar's inability to recall the events: (1) resulted in the evidence being legally insufficient to support his conviction and required the trial court to grant a directed verdict; (2) resulted in the evidence being legally insufficient to justify Prihoda's stop and arrest; (3) deprived him of his right of confrontation under the United States and Texas Constitutions; and (4) made cross-examination a "meaningless exercise." "By combining more than one contention in a single point of error, an appellant risks denial on the ground that the issue is multifarious and presents nothing for review." *Sparkman v. State*, 55 S.W.3d 625, 630-31 (Tex. App.—San Antonio 2000, no pet.); *see also Mays*, 318 S.W.3d at 385 (noting multifarious issue "risks rejection on that basis alone"). As an appellate court, we may refuse to review a multifarious issue or we may elect to consider the issue if we are able to

determine, with reasonable certainty, the alleged error about which the complaint is made. *Stults v. State*, 23 S.W.3d 198, 205 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd); *Shull v. United Parcel Serv.*, 4 S.W.3d 46, 51 (Tex. App.—San Antonio 1999, pet. denied). The basis for all of the complaints made by Prihoda in his first point of error is his contention that Officer Salazar had no recollection of the events leading to Prihoda's arrest. In the interest of justice, we elect to consider this contention.

Officer Salazar is a fourteen-year veteran with the San Antonio Police Department. Officer Salazar observed Prihoda driving a vehicle traveling 60 miles per hour in an area where the speed limit was 45 miles per hour. Officer Salazar further observed the vehicle being driven in an erratic and dangerous manner as it was weaving through traffic without signaling any lane changes. Officer Salazar activated his overhead lights and pulled over the vehicle. When Officer Salazar approached the driver's window, he could smell the odor of alcoholic beverages coming from the vehicle. Officer Salazar testified that Prihoda's eyes appeared to be bloodshot and glassy, and Prihoda's speech was slurred and confused. When Prihoda exited the vehicle, he was somewhat unsteady on his feet. Officer Salazar administered three field sobriety tests and determined that Prihoda was intoxicated. Officer Salazar stated that Prihoda was compliant while being arrested. Officer Salazar testified that the wife of one of the two passengers in Prihoda's vehicle arrived to pick up the passengers, and the passengers were released. Officer Salazar identified the DIC-24 form containing Prihoda's information and testified that Prihoda refused to give a breath sample and refused to sign the form. Officer Salazar testified that his vehicle was not equipped with a video, and Salazar refused to be videotaped at the station.

During cross-examination, Officer Salazar testified that when he ran Prihoda's name and date of birth through his computer, he discovered that Prihoda had three municipal warrants

outstanding for tickets. When asked if he had a "finite recollection of exactly what time" he ran Prihoda's information through the computer, Officer Salazar stated he did not remember "exactly when it was." Officer Salazar testified that he also discovered that Salazar had a prior DWI. Officer Salazar testified that one of the passengers in Prihoda's vehicle was sober while the other passenger was highly intoxicated. Officer Salazar stated that the passenger was "falling down drunk," and Officer Salazar thought the passenger probably could not even turn on a car. On a scale of one to ten in terms of intoxicated state, Officer Salazar testified that the passenger was a nine or an eight, while Prihoda was probably around a six or a seven. When Officer Salazar was asked whether he had a "finite recollection" of his observations of Prihoda, he answered, "No, sir."

Defense counsel then objected that Officer Salazar's testimony was not competent evidence for the trial court to consider, asserting, "It appears he is just reciting hearsay off of the police report and doesn't have a finite recollection of any of these issues." The trial court granted defense counsel permission to take Officer Salazar on voir dire. Officer Salazar admitted that the arrest was three years prior to trial and that he had probably arrested 200 individuals for driving while intoxicated since his arrest of Prihoda. Officer Salazar further stated "without my report, I wouldn't be able to remember very much." Defense counsel then moved for a directed verdict asserting, "The officer needs to have a finite recollection of this arrest. He can refer to his police report that will refresh his memory, but the officer himself has just told us it is not refreshing his memory. He has no memory to refresh." The prosecutor countered that Officer Salazar was not required to have a "finite memory" and was "remembering quite a bit of things that [were] not on the report such as [the] passengers and their condition." In response to the trial court's question regarding whether he could remember a little

or a lot, Officer Salazar stated he did not remember the specifics of the arrest but he "vaguely remember[ed] the incident because of the fact that there were those passengers that were in there." Officer Salazar stated that he remembered the passenger being drunk and the conversation about the wife of one of the passengers picking them up. Officer Salazar asserted, "So I remember this incident but not perfectly like [defense counsel] is saying, but I do recall the incident. I do remember more or less the incident. There was those little things that jarred my memory." In response to further questioning by defense counsel, Officer Salazar admitted that he would not have recognized Prihoda if he had not been sitting in the courtroom. In response to defense counsel's question regarding whether he had a "finite recollection" of Prihoda performing any field sobriety tests, Officer Salazar sated, "I know it happened, but without the report — In all honesty I couldn't remember without my report." In response to defense counsel's question about whether Officer Salazar remembered Prihoda and having an interaction with him in 2007, Officer Salazar responded, "I mean, I remember him after reading the report and going over the incident that was documented. After that happened, yes, I do remember." Officer Salazar further stated, "With the report, I do remember [Prihoda]." Officer Salazar did admit, however, that he could not identify Prihoda in court as the person he arrested that night.

On re-direct examination, Officer Salazar testified that a mug shot was taken of Prihoda on the night of his arrest, and a copy of the mug shot was introduced into evidence. Officer Salazar identified Prihoda as being the person in the mug shot.

On re-cross examination, defense counsel asked Officer Salazar if he had a personal recollection of arresting Prihoda on June 2, 2007. Officer Salazar responded, "In my mind, I am confused because with my report I do remember. Without my report, I don't remember."

Officer Salazar further explained, "But with the report, I am able to bring it back from memory recall."

Initially, we note "memory loss does not render a witness 'absent' for Confrontation Clause purposes if [the witness] is present in court and testifying." *Woodall v. State*, 366 S.W.3d 634, 644 (Tex. Crim. App. 2011). Moreover, as Prihoda acknowledges in his brief, an uncertain in-court identification will not make a verdict improper for lack of evidence if other evidence corroborates it. *Anderson v. State*, 813 S.W.2d 177, 179 (Tex. App.—Dallas 1991, no pet.). In such a case, "[t]he witness's uncertainty goes to the weight of the testimony and is for the jury" to consider, or the trial judge in a bench trial. *Id*.

Having reviewed Officer Salazar's testimony, we reject all of Prihoda's complaints based on his contention that Officer Salazar was unable to recall the events leading to his arrest. Officer Salazar was able to independently recall details that were not present in his report. Other than not being able to specifically identify Prihoda as the person mentioned in the report, which Prihoda's mug shot corroborated, Officer Salazar unequivocally stated, "With the report, I do remember." Accordingly, Prihoda's first issue is overruled, and for the reasons previously stated, Prihoda's second issue challenging the legal sufficiency of the evidence to support his conviction is also overruled.

## SPEEDY TRIAL

In his fourth issue, Prihoda contends the trial court erred in denying his motion to dismiss for lack of a speedy trial. Courts must balance four factors when analyzing a speedy trial claim. *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008). These factors are: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right; and (4) prejudice to the defendant. *Barker*, 407 U.S. at 530;

*Cantu*, 253 S.W.3d at 280. No single factor is necessary or sufficient to establish a violation of the right to a speedy trial; rather, they are related factors and must be considered together. *Barker*, 407 U.S. at 533. In conducting this balancing test, "the conduct of both the prosecution and the defendant are [to be] weighed." *Id*. at 530.

In an appeal of a trial court's ruling on a speedy trial claim, we apply an abuse of discretion standard in reviewing the trial court's resolution of factual issues; however, we apply a *de novo* standard in reviewing legal conclusions. *Cantu*, 253 S.W.3d at 282. A review of the four factors necessarily involves factual determinations and legal conclusions, but the balancing of the four factors as a whole is a purely legal question. *Id*.

Under the abuse of discretion standard applicable to factual issues, we defer not only to a trial court's resolution of disputed facts, but also to the trial court's right to draw reasonable inferences from those facts. *Id*. "In assessing the evidence at a speedy-trial hearing, the trial judge may completely disregard a witness's testimony, based on credibility and demeanor evaluations, even if that testimony is uncontroverted." *Id.* "The trial court may disbelieve any evidence so long as there is a reasonable and articulable basis for doing so[,] [a]nd all of the evidence must be viewed in the light most favorable to the [trial court's] ultimate ruling." *Id*. Because Prihoda lost in the trial court on his speedy-trial claim, "we presume that the trial judge resolved any disputed fact issues in the State's favor, and we defer to the implied findings of fact that the record supports." *Id*.

"While the State has the burden of justifying the length of delay, the defendant has the burden of proving the assertion of the right and showing prejudice." *Id*. at 280. "The defendant's burden of proof on the latter two factors 'varies inversely' with the State's degree of culpability for the delay." *Id*. "Thus, the greater the State's bad faith or official negligence and

the longer its actions delay a trial, the less a defendant must show actual prejudice or prove diligence in asserting his right to a speedy trial." *Id*. at 280-81.

## A. Length of Delay

The length of delay is the "triggering mechanism" for an analysis of the remaining factors and is measured from the date the defendant is arrested or formally accused. *Id*. at 281. The balancing test is triggered by a delay that is unreasonable enough to be "presumptively prejudicial." *Id*. "There is no set time element that triggers the analysis, but . . . a delay of four months is not sufficient while a seventeen-month delay is." *Id*. Prihoda was arrested on June 2, 2007, and his trial commenced on July 22, 2010. This almost three-year delay is sufficient to trigger a speedy trial analysis. *See id*.

## B. Reason for the Delay

Once it is determined that a presumptively prejudicial delay has occurred, the State bears the burden of justifying the delay. *Id*. at 280. Intentional prosecutorial delay is weighed heavily against the State, while more "neutral" reasons, such as negligence or overcrowded dockets, are weighed less heavily against it. *Zamorano v. State*, 84 S.W.3d 643, 649 (Tex. Crim. App. 2002) (quoting *Barker*, 407 U.S. at 531). "In the absence of an assigned reason for the delay, a court may presume neither a deliberate attempt on the part of the State to prejudice the defense nor a valid reason for the delay." *Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003).

As previously noted, Prihoda was arrested on June 2, 2007. Based on the representations made at the speedy-trial hearing, defense counsel asked for a reset on July 23, 2007, to file motions. On April 4, 2008, defense counsel announced "not ready," and no motions had been filed. On October 20, 2008, defense counsel asked for a continuance because he fell off a ladder. On December 15, 2008, a warrant was issued for Prihoda's arrest because of an interlock

violation. On February 19, 2009, the case was set on the docket for June 5, 2009, and a hearing was held on Prihoda's motion to suppress. After the motion was denied, the case was set for trial in January of 2010; however, the trial court had to reset it to July of 2010. Therefore, although part of the delay is attributable to Prihoda, most of the delay appears to be attributable to the trial court. As a result, although this factor weighs against the State, it is not weighed heavily against it.

### C. Assertion of the Right

Although it is the State's duty to bring the defendant to trial, a defendant does have the responsibility to assert his right to a speedy trial. *Cantu*, 253 S.W.3d at 282. "Whether and how a defendant asserts this right is closely related to the other three factors because the strength of his efforts will be shaped by them." *Id*. at 282-83. "The more serious the deprivation, the more likely a defendant is to complain." *Id*. at 283. "Therefore, the defendant's assertion of his speedy-trial right (or his failure to assert it) is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Id*. "Filing for a dismissal instead of a speedy trial will generally weaken a speedy-trial claim because it shows a desire to have no trial instead of a speedy one." *Id*. "If a defendant fails to first seek a speedy trial before seeking dismissal of the charges, he should provide cogent reasons for this failure." *Id*. "Repeated requests for a speedy trial weigh heavily in favor of the defendant, while the failure to make such requests supports an inference that the defendant does not really want a trial, he wants only a dismissal." *Id*.

Prihoda never filed a motion seeking a speedy trial. Instead, three years after his arrest, he filed a motion to dismiss on the day trial was to commence. This factor weighs heavily against Prihoda.

### D. Prejudice

The fourth factor in the balancing test examines "whether and to what extent the delay has prejudiced the defendant." *Id*. at 285. "When a court analyzes the prejudice to the defendant, it must do so in light of the defendant's interests that the speedy-trial right was designed to protect: (1) to prevent oppressive pretrial incarceration, (2) to minimize the accused's anxiety and concern, and (3) to limit the possibility that the accused's defense will be impaired." *Id*. The last type of prejudice is the most serious because a defendant's inability to adequately prepare his case "skews the fairness" of the system. *Id.* "To establish particularized prejudice based on an unavailable witness, a defendant must present proof both of the efforts made to locate the witness and that the witness would have benefitted his defense." *Dokter v. State*, 281 S.W.3d 152, 160 (Tex. App.—Texarkana 2009, no pet.).

In this case, the only comment made by defense counsel was that "defense has lost two key witnesses and have [sic] been substantially prejudiced." No evidence was presented to establish Prihoda's efforts to locate the witnesses or that the witnesses would have benefitted his defense. Based on the highly intoxicated state of one of the witnesses at the time of Prihoda's arrest, the trial court could have inferred that the witness would likely have been of no assistance to Prihoda's defense. Because Prihoda failed to show any prejudice, this factor weighs against him.

### E. Balancing the Four Factors

Although the three-year delay in this case triggered a speedy trial analysis, the delay was either attributable to Prihoda or to the trial court. Moreover, Prihoda did not assert his right to a speedy trial until the day trial commenced and then sought a dismissal. Finally, the record

contains no evidence that Prihoda was prejudiced by the delay. Having reviewed the four factors, we conclude the trial court did not err in denying Prihoda's motion to dismiss.

**PROOF OF PRIOR CONVICTION**

In the third point of error in his brief, Prihoda contends the State's proof of his prior conviction serves the purpose of enhancing the offense, rather than enhancing the punishment. Prihoda also contends the evidence is insufficient to prove the prior conviction.

### A. Element of Offense or Enhancement

During oral argument, Prihoda's attorney conceded that Prihoda's prior conviction served to enhance his punishment and was not an element of the offense. This court has held "when a defendant is charged with a Class A misdemeanor driving while intoxicated, the prior driving while intoxicated conviction is treated as an enhancement provision of the information, and not an element of a separate offense." *Blank v. State*, 172 S.W.3d 673, 676 (Tex. App.—San Antonio 2005, no pet). Because the prior conviction is an enhancement provision, Prihoda's contention in his brief is overruled.

### B. Proof of Prior Conviction

The State contends that Prihoda waived his complaint relating to the State's proof of the prior conviction because the parties informed the court that they had reached an agreement on punishment before the trial court ruled on whether the State proved the enhancement provision beyond a reasonable doubt. The record does not support the State's waiver argument. At the time the parties informed the court of a partial agreement on punishment (they did not agree on the amount of the fine to be assessed), the trial court had already ruled on the admissibility of the judgment of the prior conviction and its connection to Prihoda. After defense counsel objected

that the State had not proven Prihoda was the person convicted by the judgment being introduced into evidence, the following exchange occurred:

> THE COURT: Any answer to that?
>
> [PROSECUTOR]: Judge, just that I have already stated, the fingerprint is too smudged. Yesterday was the guilt/innocence phase, then sentencing was just this morning. We cannot get a pen packet from Travis County. Had it been Bexar County, we would have been able to get it. But we could not get the pen packet. But that judgment does have value in that it does have the defendant's full name, identifiers. It does have his signature, Your Honor. And so we argue that that self-authenticated copy from Travis County is enough to prove up the DWI second.
>
> THE COURT: Okay. I notice the signature, so I [will] allow it in over the objection about the print. That would be State's 4, right?

Defense counsel's objection informed the trial court that defense counsel was contending that the State had failed to offer any evidence linking Prihoda to the prior conviction. Accordingly, the trial court's ruling was not limited to the admissibility of the exhibit but was an implicit finding that the State had proven the prior conviction beyond a reasonable doubt. Therefore, we hold that Prihoda preserved this issue for our review.[1]

With regard to Prihoda's assertion that the State failed to prove the prior conviction, the State is required to prove beyond a reasonable doubt that: (1) a prior conviction exists; and (2) the defendant is linked to that conviction. *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007). However, "[n]o specific document or mode of proof is required to prove these two elements." *Id*. "While evidence of a certified copy of a final judgment and sentence may be a preferred and convenient means" to prove the fact of the prior conviction, "the State may prove

---

[1] The State cites *Schultz v. State*, 255 S.W.3d 153 (Tex. App.—San Antonio 2008, no pet.), to support its contention that Prihoda is precluded from challenging the sufficiency of the evidence to support his prior conviction because he agreed to the punishment. In *Schultz*, however, this court noted that Schultz entered into an agreement with the State following the jury's guilty verdict "thereby foregoing the punishment phase of trial." *Id*. at 154. In this case, Prihoda did not forego the punishment phase, but instead raised his objection before the trial court was informed of any agreement.

both of these elements in a number of ways, including . . . documentary proof (such as a judgment) that contains sufficient information to establish both the existence of a prior conviction and the defendant's identity as the person convicted." *Id*. at 921-22. "Any type of evidence, documentary or testimonial, might suffice." *Id*. at 922.

In general, "the proof that is adduced to establish that the defendant on trial is one and the same person that is named in an alleged prior criminal conviction or convictions closely resembles a jigsaw puzzle." *Id*. at 923 (quoting *Human v. State*, 749 S.W.2d 832, 836 (Tex. Crim. App. 1988)). "The pieces standing alone usually have little meaning." *Id*. "However, when the pieces are fitted together, they usually form the picture of the person who committed that alleged prior conviction or convictions." *Id*. The trier of fact is required to fit the pieces of the jigsaw puzzle together and weigh the credibility of each piece. *Id*. "Regardless of the type of evidentiary puzzle pieces the State offers to establish the existence of a prior conviction and its link to a specific defendant, the trier of fact determines if these pieces fit together sufficiently to complete the puzzle." *Id.* If the existence of the conviction and its link to the defendant can be found beyond a reasonable doubt, "then the various pieces used to complete the puzzle are necessarily legally sufficient to prove a prior conviction." *Id*. Since this is a legal sufficiency review, we consider all the evidence in the light most favorable to the trier of fact's finding. *Isassi v. State*, 330 S.W.3d 633, 639 (Tex. Crim. App. 2010); *Littles v. State*, 726 S.W.2d 26, 30 (Tex. Crim. App. 1984).

The only evidence in the record linking Prihoda to the prior conviction is: (1) his full name on the judgment evidencing his prior conviction; (2) his signature on that judgment; and

(3) the following reference to the prior conviction during the arresting officer's testimony at the guilt-innocence phase of the trial:[2]

> Q.      Okay.  And at that point were you also made aware that he had a prior DWI?
>
> A.      After — I believe after I checked his driver's license history there was a — I don't remember exactly when, but it [was] somewhere during that course.

Based on existing precedent, we note that a certified copy of the judgment standing alone is insufficient to prove a prior conviction, and this is true even if the name on the judgment is the same as the defendant in trial.  *Beck v. State*, 719 S.W.2d 205, 210 (Tex. Crim. App. 1986); *Menefee v. State*, 928 S.W.2d 274, 278 (Tex. App.—Tyler 1996, no pet.).  The Texas Court of Criminal Appeals also has held "where handwriting samples are introduced without expert testimony and the jury alone must make the comparison, and there is no other evidence to connect the [defendant] with the prior convictions," the identity of the defendant as the person previously convicted "has not been sufficiently established."  *Cain v. State*, 468 S.W.2d 856, 859 (Tex. Crim. App. 1971).  Although the State argues that the Texas Court of Criminal Appeals overruled *Cain*, the court actually held, "To the extent that *Daniels*, *Cain*, *Gollin*, or any other case can be read as holding that there are *exclusive* manners of proof of a defendant's identity as to prior felonies used for enhancement, they are overruled."  *Littles*, 726 S.W.2d at 32 (emphasis in original).  Thus, the actual holding in *Cain*, that the evidence introduced in that case was insufficient to prove the prior conviction, was not overruled.

The State cites numerous cases to support its assertion that the evidence in this case is sufficient to link Prihoda to the prior conviction beyond a reasonable doubt.  Because the facts of

---

[2] We note that the underlying trial was a bench trial.  A bench trial is a unitary trial, and the decision of the court is not fixed until it renders judgment on guilt and punishment after all the evidence and arguments are heard.  *Barfield v. State*, 63 S.W.3d 446, 451 (Tex. Crim. App. 2001).

each case are unique with regard to the evidence relied upon by the court in determining the

sufficiency of the link, we briefly summarize the evidentiary links in the cited cases.

In the following cases, the evidence was found to be sufficient to link the defendant to the

prior conviction:

*Human v. State*, 749 S.W.2d 832, 837-40 (Tex. Crim. App. 1988)

- Expert testimony linked fingerprints to two prior convictions

- Additional evidence included photographs with regard to one prior conviction and personal information, including height, weight, and social security number

*Littles v. State*, 726 S.W.2d 26, 32 (Tex. Crim. App. 1984).

- Photographs of defendant in records of both prior convictions

- Fingerprint testimony linked defendant to one of the prior convictions

*Benton v. State*, 336 S.W.3d 355, 359-60 (Tex. App.—Texarkana 2011, pet. ref'd)

- Full name "Courtney Antoine Benton" – court noted "quite unlikely that another by the name of Courtney Antoine Benton was convicted in Harris County, Texas, within the time frames listed in those prior convictions"

- Date of birth

- Mother's name "Joycelyn Alexander" listed in prior felony conviction as Benton's mother and Benton identified Joycelyn Alexander as his mother in his video confession played for the jury

- Comparison of signatures

*Orsag v. State*, 312 S.W.3d 105, 116-18 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd)

- Fiancé's testimony that she had known the defendant for thirteen or fourteen years and was familiar with his handwriting

- Fiancé's testimony that she was with the defendant when he was stopped for one of the prior driving while intoxicated offenses

- Fiancé's testimony that she knew about one of defendant's other driving while intoxicated offenses

- Fiancé's testimony that signature on judgment for all three prior driving while intoxicated convictions was defendant's signature

- Comparison of signatures

*Jones v. State*, No. 2-08-00298-CR, 2009 WL 1905372, at * 2-3 (Tex. App.—Fort Worth July 2, 2009, pet. dism'd) (not designated for publication)

- Conviction records in two prior convictions (exhibit 6 and 7) to which defendant did not object refer to third prior conviction (exhibit 5) as a prior conviction

- Defendant admitted he was convicted of the offense in exhibit 7

- Driver's license and date of birth in all three exhibits matched

- Pen packet for fourth prior conviction contained photograph, date of birth, height, weight, eye and hair color, skin tone, referred to conviction in exhibit 6, and contained defendant's distinctive signature

*Meek v. State*, No. 03-05-00269-CR, 2006 WL 2080644, at *3 (Tex. App.—Austin July 28, 2006, no pet.) (not designated for publication)

- Photographs, same full name, same SID #, comparison of signatures

*Langford v. State*, No. 05-98-01901-CR, 1999 WL 1253068, at *2-4 (Tex. App.—Dallas Dec. 27, 1999, no pet.) (not designated for publication)

- Expert fingerprint testimony

- Evidence of third conviction referred to the other two prior convictions by date and cause number

- Same name

- Distinctive signature

*Coleman v. State*, No. 05-97-01096-CR, 1998 WL 787306, at *3 (Tex. App.—Dallas Nov. 13, 1998, no pet.) (not designated for publication)

- Expert fingerprint testimony linked defendant to two prior convictions

- Name and address contained in third prior conviction matched name and address in indictment in one of the other prior convictions

- Motion to quash enhancement listed same address and stated that defendant received probation for third prior conviction

- Comparison of signatures

*Pachecano v. State*, 881 S.W.2d 537, 544-45 (Tex. App.—Fort Worth 1994, no pet.)

- Expert fingerprint testimony, photograph, and comparison of signatures

In the following cases, the evidence was found to be insufficient to link the defendant to the prior conviction:

*Smith v. State*, 489 S.W.2d 920, 921-22 (Tex. Crim. App. 1973)

- Comparison of signatures

- Unsworn statements made during closing argument by defense counsel referring to prior convictions after documentary evidence of prior convictions had been introduced into evidence

*Rosales v. State*, 867 S.W.2d 70, 73 (Tex. App.—El Paso 1993, no pet.)

- Comparison of signatures

Although we acknowledge that a factfinder's comparison of signatures generally can be one piece of the evidentiary puzzle to link a defendant to a prior conviction even absent expert testimony, we are troubled by using a signature comparison as evidentiary support in this case because the record does not reflect that the trial judge made an actual comparison of the signatures. In many of the cases cited above, the opinions reflect that the State introduced documents from the case in question into evidence to enable the factfinder to make such a comparison. *See, e.g., Benton*, 336 S.W.3d at 359-60; *Orsag*, 312 S.W.3d at 117-18; *Coleman*, 1998 WL 787306, at *2-3. In the instant case, no such documents were admitted into evidence, and none of the documents signed by Prihoda in the instant case contains the signature of the

trial judge who presided over the punishment hearing. Although we must view the evidence in the light most favorable to the trial court and acknowledge that the trial court "could" have compared the signature on the judgment to the signatures on the documents in the file, relying on such a comparison in this case given the record as a whole raises serious concerns. Even if we accept that the trial judge made a comparison of Prihoda's signatures, we hold that the evidence presented in this case failed to sufficiently link Prihoda to the prior conviction. We note that no evidence was introduced to show that Prihoda's name was sufficiently unique to enable the trial court to rely on his name as a evidentiary link, and Officer Salazar's vague response to a single question about a prior DWI would not enable the trial court to fit these pieces of evidence together to link Prihoda, beyond a reasonable doubt, to the prior conviction.

## CONCLUSION

Because we hold the State failed to sufficiently prove Prihoda's prior conviction, we affirm the judgment of conviction, but we reverse the trial court's judgment as to punishment and remand the cause for a new punishment hearing. *See* TEX. CODE CRIM. PROC. ANN. art. 44.29 (West Supp. 2010).

Catherine Stone, Chief Justice

PUBLISH