

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-12-00021-CR

Burton John **NEESVIG**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 7, Bexar County, Texas
Trial Court No. 355176
Honorable Genie Wright, Judge Presiding

Opinion by:     Catherine Stone, Chief Justice

Sitting:     Catherine Stone, Chief Justice
             Sandee Bryan Marion, Justice
             Rebeca C. Martinez, Justice

Delivered and Filed:  March 6, 2013

AFFIRMED

The sole issue raised by Burton John Neesvig on appeal is that the trial court erred in denying his motion to dismiss for lack of a speedy trial. We overrule this issue and affirm the trial court's judgment.

### *BARKER V. WINGO* FACTORS

Courts must balance four factors when analyzing a speedy trial claim. *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008). These factors are: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion

of the right; and (4) prejudice to the defendant. *Barker*, 407 U.S. at 530; *Cantu*, 253 S.W.3d at 280. No single factor is necessary or sufficient to establish a violation of the right to a speedy trial; "[r]ather, they are related factors and must be considered together." *Barker*, 407 U.S. at 533. In conducting this balancing test, we weigh "the conduct of both the prosecution and the defendant." *Id*. at 530.

"While the State has the burden of justifying the length of delay, the defendant has the burden of proving the assertion of the right and showing prejudice." *Cantu*, 253 S.W.3d at 280. "The defendant's burden of proof on the latter two factors 'varies inversely' with the State's degree of culpability for the delay." *Id*. "Thus, the greater the State's bad faith or official negligence and the longer its actions delay a trial, the less a defendant must show actual prejudice or prove diligence in asserting his right to a speedy trial." *Id*. at 280–81.

### STANDARD OF REVIEW

In an appeal of a trial court's ruling on a speedy trial claim, we apply an abuse of discretion standard in reviewing the trial court's resolution of factual issues; however, we apply a *de novo* standard in reviewing legal conclusions. *Cantu*, 253 S.W.3d at 282. A review of the four *Barker v. Wingo* factors necessarily involves factual determinations and legal conclusions, but the balancing of the four factors as a whole is a purely legal question. *Id*.

Under the abuse of discretion standard applicable to factual issues, we defer not only to a trial court's resolution of disputed facts, but also to the trial court's right to draw reasonable inferences from those facts. *Id*. "In assessing the evidence at a speedy-trial hearing, the trial judge may completely disregard a witness's testimony, based on credibility and demeanor evaluations, even if that testimony is uncontroverted." *Id*. "The trial judge may disbelieve any evidence so long as there is a reasonable and articulable basis for doing so[,] [a]nd all of the evidence must be viewed in the light most favorable to the [trial court's] ultimate ruling." *Id*.

Because Neesvig lost in the trial court on his speedy-trial claim, "we presume that the trial judge resolved any disputed fact issues in the State's favor, and we defer to the implied findings of fact that the record supports." *Id*.

## APPLICATION AND BALANCING OF *BARKER V. WINGO* FACTORS

### A. Length of Delay

The length of delay is the "triggering mechanism" for an analysis of the remaining three factors and is measured from the date the defendant is arrested or formally accused. *Cantu*, 253 S.W.3d at 281. The balancing test is "triggered by a delay that is unreasonable enough to be 'presumptively prejudicial.'" *Id*. "There is no set time element that triggers the analysis, but . . . a delay of four months is not sufficient while a seventeen-month delay is." *Id*.

Neesvig was initially arrested on September 27, 2008, and his trial commenced on November 7, 2011. This over three year delay is sufficient to trigger a speedy trial analysis. *See Shaw v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003).

### B. Reason for the Delay

Once it is determined that a presumptively prejudicial delay has occurred, the State bears the burden of justifying the delay. *Cantu*, 253 S.W.3d at 280. Intentional prosecutorial delay is weighed heavily against the State, while more "neutral" reasons, such as negligence or overcrowded dockets, are weighed less heavily against it. *Zamorano v. State*, 84 S.W.3d 643, 649 (Tex. Crim. App. 2002) (quoting *Barker*, 407 U.S. at 531). "In the absence of an assigned reason for the delay, a court may presume neither a deliberate attempt on the part of the State to prejudice the defense nor a valid reason for the delay." *Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003).

Because Neesvig was charged with six other offenses, including two felony offenses, he delayed requesting a trial setting. At the hearing on Neesvig's motion, defense counsel testified

that they were working on the other cases, and the instant case was the last one. Defense counsel testified that an agreement was reached on one of the other offenses, a DWI, in March of 2010. The instant case was first set on the jury call docket on July 31, 2010, which was almost two years after Neesvig was initially arrested on September 27, 2008.

Although delay caused by good faith plea negotiations is a valid reason for the delay and is not weighed against the prosecution, delay caused by extended plea negotiations can be attributed to the defendant. *See State v. Munoz*, 991 S.W.2d 818, 824–25 & n.6 (Tex. Crim. App. 1999). In this case, the negotiations were extended not due to the facts of the instant case, but due to the negotiations relating to the other six offenses. From the testimony, the trial court could infer that defense counsel did not focus on the negotiations involving the instant case until after the DWI offense was resolved in March of 2010. Therefore, the almost two-year delay from the date of Neesvig's arrest and the first trial setting weighs against him. *See id.*

The State announced not ready for two trial settings in July and August of 2010. The State then dismissed the case in November of 2010 because of a missing witness.[1] A missing witness is considered a valid reason that justifies an appropriate delay. *Baker*, 407 U.S. at 531.

The State then waited three months to re-file the case. From the testimony presented, it appears that the State was made aware of the witness's availability in December; accordingly, we weigh the State's delay in refiling the case against the State.

After the case was re-filed in February of 2011, an arraignment hearing was set on March 30, 2011. The record contains no evidence to explain the delay from the March setting to the next setting in May of 2011; however, in May of 2011, a motion to withdraw filed by Neesvig's

---

[1] Although Neesvig speculates in his brief that the State's dismissal and re-filing of the charges could have been in bad faith, nothing in the record supports this speculation. Moreover, the State is generally free to reindict a defendant after a dismissal so long as jeopardy did not attach prior to the dismissal. *See Proctor v. State*, 841 S.W.2d 1, 3-4 (Tex. Crim. App. 1992).

retained counsel was granted, and he was appointed counsel to represent him. The case was then set for trial on November 7, 2011. Accordingly, it would appear that a portion of the nine-month delay between the date the case was re-filed and the date of trial is attributable to Neesvig; however, the record does not reflect a reason for the entire nine-month delay before the case proceeded to trial on November 7, 2011. Since the reason for this nine-month delay does not appear on the record, the delay from at least May of 2011 to November of 2011 weighs against the State; however, it is not weighed heavily against it. *See Dragoo*, 96 S.W.3d 314.

In summary, of the approximate three-year delay, approximately two years of the delay weighs against Neesvig, and approximately one year weighs against the State, but the majority of the one-year delay does not weigh heavily against the State. Therefore, this factor weighs against Neesvig.

### C. Assertion of the Right

Although it is the State's duty to bring the defendant to trial, "a defendant does have the responsibility to assert his right to a speedy trial." *Cantu*, 253 S.W.3d at 282. "Whether and how a defendant asserts this right is closely related to the other three factors because the strength of his efforts will be shaped by them." *Id*. at 282–83. "The more serious the deprivation, the more likely a defendant is to complain." *Id*. at 283. "Therefore, the defendant's assertion of his speedy-trial right (or his failure to assert it) is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Id*. "Filing for a dismissal instead of a speedy trial will generally weaken a speedy-trial claim because it shows a desire to have no trial instead of a speedy one." *Id*. "If a defendant fails to first seek a speedy trial before seeking dismissal of the charges, he should provide cogent reasons for this failure." *Id*. "Repeated requests for a speedy trial weigh heavily in favor of the defendant, while the failure to

make such requests supports an inference that the defendant does not really want a trial, he wants only a dismissal." *Id.*

Neesvig argues that his request for a trial setting before the charge was dismissed was an assertion of his right to a speedy trial. Given the on-going negotiations regarding the other charges that were pending against Neesvig, however, the trial court could have found that the request for a trial setting was simply an indication that Neesvig was finally prepared to proceed to trial on the charge. The record does not contain any motion filed by Neesvig seeking a speedy trial. Instead, almost three years after his initial arrest, he filed a motion to dismiss four days before the trial was to commence and nine months after the charge was re-filed. This factor weighs heavily against Neesvig. *See Prihoda v. State*, 352 S.W.3d 796, 805 (Tex. App.—San Antonio 2011, pet. ref'd) (filing of motion to dismiss three years after arrest and on the day trial was to commence weighed heavily against defendant); *Dokter v. State*, 281 S.W.3d 152, 159 (Tex. App.—Texarkana 2009, no pet.) (plea negotiations do not excuse defendant's failure to timely assert his right to a speedy trial).

### D.     Prejudice

The fourth factor in the balancing test examines "whether and to what extent the delay has prejudiced the defendant." *Cantu*, 253 S.W.3d at 285. "When a court analyzes the prejudice to the defendant, it must do so in light of the defendant's interests that the speedy-trial right was designed to protect: (1) to prevent oppressive pretrial incarceration, (2) to minimize the accused's anxiety and concern, and (3) to limit the possibility that the accused's defense will be impaired." *Id.* The last type of prejudice is the most serious because a defendant's inability to adequately prepare his case "skews the fairness" of the system. *Id.*

Neesvig argues that he was prejudiced because he was financially unable to retain the same attorney after the State dismissed the charge. The record establishes, however, that part of

Neesvig's financial difficulty resulted from posting bond for the other charges he was facing when the attorney was originally retained. *See Gonzalez v. State*, 117 S.W.3d 831, 837 (Tex. Crim. App. 2003) (noting right to counsel of choice is not absolute because defendant has no right to an attorney he cannot afford). Moreover, Neesvig's desire to have a retained attorney of his choosing does not demonstrate that he was prejudiced by having an appointed attorney, and no evidence was presented to show Neesvig's defense was impaired by the delay.

At the hearing, Neesvig's attorney alluded to Neesvig's onerous pretrial incarceration; however, that incarceration stemmed from seven pending offenses, including two felonies, not just the present offense. When the charges were re-filed and Neesvig was re-arrested, the record shows that Neesvig immediately posted bond. Neesvig also contends that he suffered anxiety and concern when the charges were re-filed. "[E]vidence of generalized anxiety, though relevant, is not sufficient proof of prejudice under the *Barker* test, especially when it is no greater anxiety or concern beyond the level normally associated with a criminal charge or investigation." *Cantu*, 253 S.W.3d at 286. Finally, the presumption of prejudice based on excessive delay was extenuated by Neesvig's longtime acquiescence in the delay. *Dragoo*, 96 S.W.3d at 315. Accordingly, this factor weighs against Neesvig.

### E.     Balancing the Four Factors

Although the approximate three-year delay in this case triggered a speedy trial analysis, two years of the delay is attributable to Neesvig. Moreover, Neesvig did not assert his right to a speedy trial until four days before the trial commenced and then sought a dismissal. Finally, the presumption of prejudice was extenuated by Neesvig's longtime acquiescence in the delay, and the record contains no other evidence Neesvig's defense was prejudiced by the delay. Having reviewed the four factors, we conclude the trial court did not err in denying Neesvig's motion to dismiss.

## CONCLUSION

The trial court's judgment is affirmed.

Catherine Stone, Chief Justice

DO NOT PUBLISH