

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-13-00330-CR

Raymond **CLARK**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court No. 2012CR4130
Honorable Maria Teresa Herr, Judge Presiding

Opinion by:    Luz Elena D. Chapa, Justice

Sitting:        Catherine Stone, Chief Justice
                Marialyn Barnard, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed:  August 6, 2014

AFFIRMED

A jury convicted Raymond Clark of aggravated robbery and assessed his punishment at twenty years' incarceration. *See* TEX. PENAL CODE ANN. § 29.03 (West 2011). On appeal, Clark challenges his conviction in three issues, contending that the evidence is insufficient to support his conviction; that the trial court reversibly erred because its charge "failed to require unanimity on the specific element of self-defense that the jury rejected"; and that the trial court reversibly erred by instructing the jury on the doctrine of provocation when there was no evidence to support it. We affirm.

## BACKGROUND

The complainant, Robert McKinnis, was shot around 4 a.m. on the morning of February 12, 2012. The bullet entered McKinnis's chest next to his right armpit at an upward angle, bounced off his shoulder blade, and exited out his back. The shooting occurred outside two mobile homes on the 14000 block of Toepperwein Road in northeastern Bexar County, Texas. The circumstances of the shooting were contested at trial.

McKinnis admitted that he was a drug dealer at the time of the shooting and that one of his customers was Holly Scribner, Clark's then-girlfriend. McKinnis testified that he had met Clark once through Scribner before the shooting. During that meeting, McKinnis offered to allow Clark and Scribner enter his drug-dealing business and also offered to lend financial assistance, at their request.

McKinnis testified that Scribner had been "frantically" texting him on the night of the shooting because "she had gotten into it" with Clark and she "want[ed] to hang out to calm her nerves." He testified that this meant she wanted to smoke marijuana and do methamphetamines ("meth"). McKinnis testified Scribner picked him up from a Carl's Jr. burger chain store in a blue SUV. Scribner's friend, Gabriella Garcia, was also a passenger in the SUV. McKinnis testified he bought them all food at Carl's Jr, paid cash, and received $26.06 in change. McKinnis testified he brought a bag containing toiletries and clothing because he did not know where they would end up that night. The bag also held his Kindle Fire, two Blackberry phones, an iPhone, and another phone. He also brought self-rolled marijuana cigars, just under a gram of meth in a small baggie, and syringes. He testified he did not bring more drugs or a gun that night because he was not intending to sell drugs.

McKinnis testified that Scribner drove around that evening while they all smoked the marijuana cigars. Scribner and Garcia eventually decided to go to Juan Cuevas's mobile home.

McKinnis testified that a maroon van pulled up to the home less than a minute after they did. He further testified that he saw Clark jump out of the van, at which point Scribner and Garcia ran inside the mobile home. He then saw Clark run up with a gun to the mobile home's front door and yell something. He testified Clark then came over to where McKinnis was sitting in the back of the SUV behind the driver's seat.

McKinnis testified that Clark came toward him with a gun raised at him and was yelling at McKinnis to get out of the vehicle. McKinnis testified that he began to exit the vehicle and that he tried to defuse the situation because he thought Clark was jealous that his girlfriend was out with another man. McKinnis testified that a "small scuffle broke out," although he did not lunge at Clark, and that Clark shot him during the scuffle. McKinnis testified that he never had the upper hand and that, after he was shot, he fell to his knees and Clark pistol whipped him on the side of his head.

McKinnis testified that Clark began demanding to know where his drugs and money were. McKinnis testified that he held up his hands and told Clark to look in his bag. He testified that Clark then dumped out the contents of his bag. McKinnis saw Clark take the pair of McKinnis's shoes that fell out of the bag and toss them in the SUV. Clark ordered McKinnis to take off his shoes, and Clark tossed those shoes in the SUV as well.

McKinnis testified that Clark continued to demand to know "where the drugs were" and also where McKinnis's money was. McKinnis testified that he emptied his pockets and that Clark took his $26.06 in change from him along with a cell phone. McKinnis testified he was also holding out the small baggie containing the meth and offering it to Clark, but that he dropped it because Clark kicked him in the face.

McKinnis testified that Clark demanded that he find the drugs and made him search the ground for them. He testified that Clark repeatedly told him "not to make a scene" or else he would

kill him. McKinnis also testified that, if a car drove by, Clark would jump in the shadows but keep the gun trained on him. At some point, Clark also struck him with a beer bottle. According to McKinnis's testimony, this behavior continued until he saw a police car approaching, at which point he stood up and ran to the car with his hands up. He lost consciousness while talking with officers.

On cross-examination, McKinnis testified that he had smoked marijuana during the day. He also admitted to injecting himself with meth about three hours before the shooting. McKinnis testified that the quality and quantity of drugs he used would probably incapacitate someone inexperienced with drugs, but that he had developed a high tolerance.

Siblings Maribel Hernandez and Juan Hernandez lived next door to Cuevas's mobile home and testified as earwitnesses. They both testified they were awakened by the fighting outside. Maribel testified she heard a loud aggressive voice demanding something from a different person. She heard one person saying: "You better find it. You better find it." She testified she heard another voice say: "It was, Please, God. I dropped it over there." From the sounds she heard, she inferred that the aggressive person was standing over the other person on the ground. She did not think there was a struggle between the two because the person on the ground was not trying to overpower the one standing and was pleading for his life. She also testified that she never heard the person on the ground struggle for the gun or attempt to take it away, but she did hear him trying to comply with the shooter's commands. Juan's testimony was consistent with Maribel's, though less detailed.

Officer Jared Odom, who was the first police responder on the scene, testified that he was dispatched to the area because of a reported shooting. When he arrived, he saw McKinnis in the roadway. He then saw Clark approaching. Officer Odom drew his weapon and detained both. He found a pistol magazine for a Taurus .40 caliber pistol in Clark's back right pocket. He also

testified there was a pistol case in the back of Clark's SUV and that he did not find any cell phones, cash, or drugs on Clark.

Mark Rivera, Garcia's husband, testified that Clark called him looking for his vehicle that night, saying "[t]he bitch took my car." Rivera told Clark that Scribner had picked up Garcia earlier that night in Clark's car. Rivera testified that he drove Clark to Cuevas's home because Rivera suspected Garcia was having an affair with Cuevas. Although Rivera initially testified that Clark did not have a gun on him, he later acknowledged that he did not know whether Clark actually had a gun. He testified that when they first arrived, he saw Garcia run into Cuevas's mobile home. He testified that he then saw Clark approach the SUV, grab somebody, and start struggling. Rivera then drove off because he knew that he would have "done something" had he stayed.

Clark testified that he and Scribner had argued earlier in the day and that she had taken his blue SUV without his permission or knowledge while he was in the shower. He testified that he called Rivera and asked for a ride after Rivera told him that Scribner had picked up Garcia and said that he suspected they were at Cuevas's. Clark testified he did not have a gun that night.

Clark testified that he did not see Scribner or Garcia when he arrived at Cuevas's home, but he did see an unfamiliar man sitting in the back seat of his SUV with the door open. He testified he did not recognize McKinnis because he had never met him before. He testified McKinnis looked "strung out," and that he told McKinnis to "get the f*** out of my truck." He testified that McKinnis appeared startled and that he saw McKinnis grab a gun out of a box in the SUV. Clark testified that he then grabbed McKinnis and jerked him out of the car, causing a bag to fall out of the car, spilling syringes. He testified there was a struggle for the gun, and Clark admitted he said "I'm going to kill you."

Clark testified that he was afraid for his life and that the gun went off during the struggle. He testified that, after McKinnis was shot, he demanded to know where McKinnis's drugs were

because he wanted to get them out of his car. Clark denied demanding McKinnis's money or cell phones. He also testified that the clip found in his pocket fell out of the bag containing the syringes and that he picked up the clip to "take it out of the situation." He also testified that the gun fell to the ground after the struggle and he did not know what happened to the gun after that.

On cross-examination, the State pressed Clark on the inconsistencies between his testimony and his initial statements to the police officers. For instance, he admitted that he lied when he initially told the officers that he lived in Cuevas's mobile home. He lied that he was inside the mobile home with Scribner and Garcia when he heard something outside before confronting McKinnis. He told them that the gun was his and that he had taken the gun from inside the mobile home. He also stated that he did not know if McKinnis charged at him. And although he told the officers that he hit McKinnis with a beer bottle, he denied it at trial.

### SUFFICIENCY OF THE EVIDENCE

In his first point of error, Clark contends his conviction for aggravated robbery is not supported by the evidence.

Due process requires that a criminal conviction be supported by sufficient evidence from which a rational trier of fact could conclude that the accused is guilty of every essential element of a crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 316 (1979). When reviewing the sufficiency of the evidence supporting a conviction, an appellate court does not "weigh the evidence tending to establish guilt against the evidence tending to establish innocence," nor does it "assess the credibility of witnesses on each side." *Ex parte Elizondo*, 947 S.W.2d 202, 205 (Tex. Crim. App. 1996); *see Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009) ("Appellate courts are ill-equipped to weigh the evidence; unlike the factfinder—who can observe facial expressions and hear voice inflections first-hand—an appellate court is limited to the cold record."). Instead, the court considers "'all of the evidence in the light most favorable to the verdict

and determine[s] whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt.'" *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

A person commits robbery if, while in the course of committing theft and with intent to obtain or maintain control of the property, he either (1) intentionally, knowingly, or recklessly causes bodily injury to another or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. TEX. PENAL CODE ANN. § 29.02(a) (West 2011). If the person used or exhibited a deadly weapon during the commission of the offense, he may be charged with aggravated robbery. *Id.* § 29.03(a)(2). The aggravated robbery indictment against Clark alleged that he committed robbery both by causing McKinnis bodily injury and by threatening McKinnis with imminent bodily injury or death. It further alleged that he did so while using a firearm as a deadly weapon.

Clark contends that "the State failed to prove that the Appellant had the intent to commit the offense of theft" because his own version of the night's events was "more obviously logical" than McKinnis's. He argues that his testimony shows that he did not demand McKinnis's drugs because he wanted to steal them, but because he wanted them out of his car. He emphasizes the fact that McKinnis admitted to being very high and could not remember everything from that night. He also points to the fact that none of the property that McKinnis testified was taken from him was found on Clark's person.

Under the appropriate standard of review, it was the jury's prerogative to determine whether McKinnis's or Clark's version of that night's events was more plausible. The jury credited McKinnis, despite his admission that he was high on marijuana and meth at the time, and disbelieved Clark, whose trial testimony about the night's events was impeached by the State with his initial statements to police officers about that night's events. We cannot disturb that credibility

- 7 -

determination. *See Ex parte Elizondo*, 947 S.W.2d at 205; *e.g.*, *Perry v. State*, No. 01-09-01136-CR, 2011 WL 286132, at \*12 (Tex. App.—Houston [1st Dist.] Jan. 27, 2011, no pet.) (mem. op., not designated for publication) (holding that the weight and credibility of a witness's testimony is a matter for the jury even when the witness admits that he was high on drugs at the time of the events to which he testifies).

Clark's argument that he did not have the intent to commit theft because the officer did not find drugs, money, or a gun on him is unpersuasive. Under the Penal Code, "[t]he actual commission of the offense of theft is not a prerequisite to the commission of the offense of robbery," and "proof of a completed theft is not required to establish a robbery." *Caldwell v. State*, 943 S.W.2d 551, 552 (Tex. App.—Waco 1997, no pet.); *see also Garza v. State*, 100 S.W.3d 347, 349–50 (Tex. App.—San Antonio 2002, no pet.) ("[T]he element of the aggravated robbery offense that requires a threat to be made 'in the course of committing theft' only requires that the conduct occur in an attempt to commit theft . . . ."). Because Clark did not need to complete the offense of theft in order for the State to prove aggravated robbery, it did not need to prove he actually appropriated any property. *See Caldwell*, 943 S.W.2d at 552; *Sorrells v. State*, No. 07-04-0287-CR, 2005 WL 146895 (Tex. App.—Amarillo Jan. 20, 2005, no pet.) (holding that whether a defendant actually succeeded in obtaining money from a victim does not show that evidence supporting robbery conviction was insufficient). Viewing the evidence in the light most favorable to the verdict, a rational jury could have found that Clark committed aggravated robbery when he 1) threatened McKinnis with death or 2) caused McKinnis bodily injury by shooting him, pistol-whipping him, and striking him with a beer bottle—all while demanding that McKinnis hand over his money, drugs, and shoes and while exhibiting a deadly weapon.

We overrule Clark's first issue.

## JURY CHARGE—UNANIMITY[1]

In his second issue, Clark contends that the trial court erred by not submitting an instruction that the jurors must unanimously agree on the specific element or elements of his affirmative defense of self-defense. He argues that such an instruction would be supported by an extension of the unanimity principles of *Francis v. State*, 36 S.W.3d 121 (Tex. Crim. App. 2000) and *Ngo v. State*, 175 S.W.3d 738 (Tex. Crim. App. 2005).

The trial court is required to provide the jury with "a written charge distinctly setting forth the law applicable to the case . . . ." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2005); *Walters v. State*, 247 S.W.3d 204, 208 (Tex. Crim. App. 2007). "Under our state constitution, jury unanimity is required in felony cases, and, under our state statutes, unanimity is required in all criminal cases." *Ngo*, 175 S.W.3d at 745. In *Francis*, the Court of Criminal Appeals held that a jury charge that allows for a non-unanimous verdict concerning what specific criminal act the defendant committed is error. 36 S.W.3d at 125. In *Ngo*, the Court held that a jury charge that "fail[ed] to instruct the jury that it must be unanimous in deciding which one (or more) of the three disjunctively submitted offenses it found appellant committed" was error. 175 S.W.3d at 749.

The charge in Clark's case charged him with a single count of aggravated robbery and is therefore distinguishable from *Francis* and *Ngo*. Clark is unable to cite any statute or precedent that supports his argument that the holdings in those cases should be "extended" to require the trial court to separately instruct the jurors that they must unanimously agree on the element of self-defense that they rejected. Because Clark's proposed instruction is completely unsupported by any

---

[1] Clark's second and third issues, regarding alleged errors in the jury charge, are presented under a single point of error. The State argues that Clark has waived his issues under this point of error because it is multifarious. A multifarious point of error "is based on more than one legal theory and raises more than one specific complaint." *Prihoda v. State*, 352 S.W.3d 796, 801 (Tex. App.—San Antonio 2011, pet. ref'd). This court has the discretion to "refuse to review a multifarious issue or . . . elect to consider the issue if we are able to determine, with reasonable certainty, the alleged error about which the complaint is made." *Id.* Because the two issues raised in Clark's second point of error are clearly distinct and separately argued, we will address both his jury charge issues.

authority, it is not the "law applicable to the case." *Cf. Walters*, 247 S.W.3d at 211–12 (holding that "special, non-statutory instructions, even when they relate to statutory offenses or defenses, generally have no place in the jury charge" and that "[w]hen the legislature has not enacted specific statutes, courts may conclude that it intended this silence in the law and in the jury instructions"). In this case, the trial court correctly instructed the jury that it must reach a unanimous verdict in order to convict Clark—which is all that the trial court was authorized to say on unanimity.

We overrule Clark's second issue.

### JURY CHARGE—PROVOCATION

At Clark's request, the trial court included an instruction on Clark's affirmative defense of self-defense. The trial court also instructed the jury on the law of provocation, pursuant to the State's request. Clark contends the evidence at trial was insufficient to support the trial court's submission of the issue of provocation to the jury.

### A. Applicable Law

The doctrine of provocation (or "provoking the difficulty") is a concept in criminal law that acts as a limitation or total bar on a defendant's right to self-defense.[2] *Smith v. State*, 965 S.W.2d 509, 512 (Tex. Crim. App. 1998). "A charge on provocation is required when there is sufficient evidence (1) that the defendant did some act or used some words which provoked the attack on him, (2) that such act or words were reasonably calculated to provoke the attack, and (3) that the act was done or the words were used for the purpose and with the intent that the defendant

---

[2] The doctrine of provocation "is founded upon the theory of estoppel and based upon the legal maxims that, '[a] man may not take advantage of his own wrong to gain favorable interpretation of the law; he seeks the law in vain who offends against it. One cannot willingly and knowingly bring upon himself the very necessity which he sets up for his own defense.'" *Smith*, 965 S.W.2d at 513–14 (quoting *Sorrell v. State*, 169 S.W. 299, 307 (Tex. Crim. App. 1914)) (internal alterations and ellipses omitted).

would have a pretext for inflicting harm upon the other." *Id.* at 513. "All of the elements are questions of fact." *Id.*

## B. Standard of Review

"An instruction on provocation should only be given when there is evidence from which a rational jury could find every element of provocation beyond a reasonable doubt." *Id.* at 514. "Under such an analysis the appellate court asks if there was sufficient evidence from which a rational jury could have found provocation beyond a reasonable doubt, viewing the evidence in the light most favorable to giving the instruction." *Id.*

## C. Application

### 1) Requirement of provocation in fact

The first element of the provocation analysis requires evidence that "the defendant did some act or used some words which provoked the attack on him." *Id.* "Absent any evidence that an act or words of the defendant caused the attack on him, the case merely involves the question of which of the two parties used unlawful force." *Id.* "[I]f a rational jury could find beyond a reasonable doubt that some act or words of the defendant actually caused the attack on him, then this part of the inquiry is satisfied." *Id.*

McKinnis testified that Clark was yelling as he approached him with a drawn gun before the scuffle happened. Clark testified that he told McKinnis "to get the f*** out of my truck" as he initially approached McKinnis and that McKinnis appeared startled. We hold that a reasonable jury could conclude from this evidence that Clark's actions and words caused McKinnis to attack him. *See Crawford v. State*, No. 01-98-00965-CR, 1999 WL 1018173, at *2 (Tex. App.—Houston [1st Dist.] Nov. 10, 1999, pet. ref'd) (not designated for publication) ("In this case, there is sufficient evidence from which the jury could find appellant caused the attack by Hardin. Appellant set the tone for the exchange between the men by bringing his rifle outside. Appellant yelled as he

approached Hardin, and used physical force to try to prevent Hardin from hooking up his truck to the wrecker. Several witnesses testified appellant pointed the rifle at Hardin and put the gun right at his face.").

### 2) Requirement of reasonableness

The second element of the provocation analysis requires evidence that the defendant's acts or words were reasonably calculated to provoke the attack. *Smith*, 965 S.W.3d at 517. "An act is reasonably calculated to cause an attack if it is reasonably capable of causing an attack, or if it has a reasonable tendency to cause an attack." *Id.* "Some provoking acts or words can by their own nature be legally sufficient to support a jury finding." *Id.* "[W]hether an act is reasonably calculated to cause an attack can be determined from circumstantial evidence." *Id.*

Again, the evidence shows that Clark approached McKinnis with a drawn gun while yelling obscenities. This is some evidence from which a jury could conclude that Clark's actions and words were reasonably capable of causing an attack or had a reasonable tendency to cause an attack. *See Bateson v. State*, 80 S.W. 88, 93 (Tex. Crim. App. 1904) ("[I]f the jury believed that appellant called deceased a son of a bitch, this would certainly be sufficient to provoke an assault by deceased."), *overruled in part by*, *Clark v. State*, 120 S.W.2d 179, 181 (Tex. Crim. App. 1909); *see also Crawford*, at *3.

### 3) Requirement of intent

The third element of the provocation analysis requires evidence "that the act was done, or the words were used, for the purpose and with the intent that the defendant would have a pretext for killing the victim." *Smith*, 965 S.W.3d at 518. "Intent is a matter of fact, to be determined from all of the circumstances." *Id.* "Some provoking acts may be of such a character as to carry the inference of intent with them." *Id.* "Sometimes the appellant's actions during or after the

provocation will illuminate intent." The Court of Criminal Appeals has indicated that insufficient evidence of intent occurs "in exceptional and extraordinary situations." *Id.* at 519.

We conclude that this is not a case where the jury could not consider what the defendant's intent was in provoking an attack. In this case, there was evidence of Clark's on-going demands, threats, and assaultive conduct with a deadly weapon. *See id.* (considering evidence that "appellant stabbed the victim multiple times"). There was also evidence that Clark was upset prior to arriving at Cuevas's home and before his confrontation with McKinnis. *See id.* (considering evidence that appellant had been hostile prior to the attack). Finally, there is evidence that Clark lied to police officers about where he lived and where he was prior to the confrontation, supporting an inference that he had acted pursuant to a larger scheme. From this evidence, a jury could infer that Clark intended to goad McKinnis into attacking him so that he could beat him up for being with his girlfriend and being in his truck.

We overrule Clark's third issue.

CONCLUSION

Having overruled all of Clark's issues, we affirm the trial court's judgment.

Luz Elena D. Chapa, Justice

Do Not Publish