**511·15**

CASE NO. PD-0511-15

ORIGINAL

IN THE

COURT OF CRIMINAL APPEALS OF TEXAS

IN AUSTIN

RECEIVED IN
COURT OF CRIMINAL APPEALS

JUL 10 2015

Abel Acosta, Clerk

---

ALVIN PETER HENRY, Jr.                PETITIONER

Vs.

THE STATE OF TEXAS                RESPONDANT

---

## PETITIONER'S PETITION FOR DISCRETIONARY REVIEW

---

On Petition for Discretionary Review from the Sixth Court of
Appeals in No. 06-14-00130-CR Affirming Conviction in No. 25589
from the 6th Judicial District Court of Lamar County, Texas.

FILED IN
COURT OF CRIMINAL APPEALS

JUL 10 2015

Abel Acosta, Clerk

Oral argument requested

Alvin Peter Henry, Jr.

TDCJ No. 01935874

Coffield Unit

2661 FM 2054

Tennessee Colony, Texas

75884

PRO SE.

## IDENTITY OF JUSTICES, JUDGE, PARTIES, AND COUNSEL

JUSTICES: Opinion by Justice Burgess, before Morriss, C.J., Moseley and Burgess, JJ.

TRIAL JUDGE: Honorable Bill Harris

APPELLANT-PETITIONER: Alvin Peter Henry, Jr.

ATTORNEY FOR THE PETITIONER AT TRIAL:

DAVID C. TURNER: 1116 Lamar Ave., Paris, Tx. 75460, Tel: 903-785-8511; Fax: 903-737-2455.

ATTORNEY FOR PETITIONER ON APPEAL:

GARY L. WAITE: 104 Lamar Ave., Paris, Tx. 75460, Tel: 903-785-0096; Fax: 903-785-0097.

APPELLEE-RESPONDANT: The State of Texas.

ATTORNEY AT TRIAL FOR THE STATE: Gary Young, County Attorney of Lamar County, Texas: 119 N. Main, Paris, Tx. 75460, Tel: 903-737-2413.

ELECTED DISTRICT AND COUNTY ATTORNEY: Gary D. Young, 119 N. Main Paris, Tx. 75460; Tel: 903-737-2413.

ATTORNEY ON APPEAL FOR THE STATE: Gary D. Young, County and District Attorney Lamar County and District Attorney's Office Lamar County Courthouse: 119 N. Main, Paris, Tx. 75460, Tel: 903-737-2470, Fax: 903-737-2455.

# TABLE OF CONTENTS

Cover Page                                           Page i

Identity of Justices, Judge, Parties, and

Counsel                                              Page ii

Table of Contents                                    Page iii

Index of Authorities                                 Page v

Statement Regarding Oral Argument                    Page vii

Statement of Case                                    Page viii

Statement of Procedural History                      Page ix

Statement of Jurisdiction                            Page x

Questions For Review                                 Page xi

1. Is the Sixth District Court of Appeals' ruling, that ultimately upheld the denial that prevented the Petitioner from presenting evidence of disminished capacity (during guilt/innocence phase) in conflict with Ruffin v. State, holding that the Petitioner could present disminished capacity evidence in the same type of situation that the Petitioner was in at trial?

2. Is the Sixth District Court of Appeals' ruling erroneous for allowing the trial court to deny the Petitioner a jury instruction on the requested diminished capacity theory?

3. When the State failed to properly link Petitioner to the enhancement paragraphs, did the Sixth District Court of Appeals unreasonably hold that Petitioner and Coleman's testimony (showing that Petitioner has been to prison multiple times) is sufficient to uphold the prior enhancement convictions, and is this ruling in conflict with Pri-

<u>hada v. State</u>?

Arguments:

Question one             Page 1

Question two             Page 4

Question three         Page 7

Prayer for Relief           Page 11

Inmate Declaration         Page 11

Proof of Mailing            Page 11

Appendix: Please see attached motion.

# INDEX OF AUTHORITIES

Back v. State, 719 S.W.2d 205 (Tex.Crim.App. 1986)

Page 9

Brown v. State, 122 S.W.3d 790 (Tex.Crim.App. 2003)

Page 5

Dugar v. State, ___ S.W.3d ___(April 9, 2015)(2015 Tex.App.

Lexis Lexis 3519)                            Page 4,5,7,8

Flowers v. State, 220 S.W.3d 919 (Tex.Crim.App. 2007)

Page 9

Henry v. State, No. 06-14-00130-CR, Slip Opinion (Tex.App.

6th Dist, April 16, 2015).            Page ix,2,4,6,7

Jackson v. State, 160 S.W.3d 568 (Tex.Crim.App. 2005)

Page 2-3

Krajcovic v. State, 393 S.W.3d 282 (Tex.Crim.App. 2013)

Page 4

Mays v. State, 318 S.W.3d 368 (Tex.Crim.App. 2010)

Page 1

Menefee v. State, 928 S.W.2d 274 (Tex.App.--Tyler 1996, no pet)

Page 9

Prihada v. State, 352 S.W.3d 796 (Tex.App. 4th dist, San antonio,

2011).                                    Page 7,9,10

Ruffin v. State, 270 S.W.3d 586 (Tex.Crim.App. 2008)

Page 1,2,3,5

Shaw v. State, 207 S.W.3d 779 (Tex.Crim.App. 2006)

Page 5

Smith v. State, 314 S.W.3d 576 (Tex.App.--Texarkana 2010, no

Pet)                                      Page 1

Texas Code of Criminal Procedure, art. 44.29 (West Supp 2010)

Page 10

Texas Penal Code Section 12.42(b)

Page viii

Texas Rules of Appellate Procedure:

    Rule 66.3(a)                        Page x,3,10

    Rule 66.3(f)                        Page x, general

Texas Rules of Evidence 403          Page 3

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner believes that Oral Argument will be benificial to this Honorable Court of Criminal Appeals because of the ever changing state of the caselaw at hand.

## STATEMENT OF THE CASE

Petitioner was charged by single indictment with the offense of Evading Arrest/Detention with a Motor Vehicle with a Deadly Weapon Finding, a third degree felony (Clerk's Record, P.5), with Notice of Intent to Seek Enhanced Sentence as a Habitual Offender pursuant to Penal Code Sec. 12.42(b) (Clerk's Record, Pp. 45-46). After a jury trial, Petitioner was convicted by a jury and sentenced by the same jury to sixty (60) years in the Institutional Division, Texas Department of Criminal Justice (TDCJ)(Clerk's Record, Pp. 55-56).

## STATEMENT OF PROCEDURAL HISTORY

The Petitioner gave timely notice of appeal, on July 1, 2014. CR, P.92. Appellate Counsel was appointed by the trial court on July 15, 2014. CR, p. 97. Petitioner Appealed to the Sixth Appellate District Court of Appeals of Texas at Texarkana, and Opinion by Justice Burgess affirmed the trial court's judgment on April 16, 2015. See Henry v. State, No. 06-14-00130-CR, slip opinion at page 12 (Tex.App. 6th Dist, April 16, 2015).

Petitioner's Appellate Counsel, Mr. Gary L. Waite, filed the Petitioner's motion for rehearing on May 14, 2015, and the Sixth District Court of Appeals overruled the motion for rehearing on May 19, 2015. See Henry v. State, No. 06-14-00130-CR, (Tex. App. 6th Dist, May 19, 2015)(rehearing overruled).

Petitioner sought for an extention of time to file his Petition for Discretionary Review, and this Honorable Court granted the motion and extented the time to file to July 17, 2015. See Henry v. State, No. PD-0511-15 (Tex.Crim.App. May 4, 2015)(post-card also granting petitioner the ability to file a single copy).

On or before July 17, 2015, the Petitioner files his Petition for Discretionary Review.

## STATEMENT OF JURISDICTION

Pursuant to the Texas Rules of Appellate Procedure, rule 66.3, Petitioner conjures the following rules, but not limited to, for this Honorable Court of Criminal Appeals to consider granting the Petitioner's Petition for Discretionary Review:

1· Pursuant to the Texas Rules of Appellate Procedure, rule 66.3(a), the Sixth District Court of Appeals' holding is in conflict with the Court of Criminal Appeals' ruling, along with it's Sister Court of Appeals' ruling, on the same issue.

2· Pursuant to the Texas Rules of Appellate Procedure, rule 66.3(f), Petitioner believes that the Sixth Court of Appeals' ruling is unreasonable, and in other areas didn't fully address Petitioner's complaint, that calls for this Honorable Court of Criminal Appeals' exercise of It's power of supervision at hand.

# QUESTIONS FOR REVIEW

1· Is the Sixth District Court of Appeals' ruling, that ultimately upheld the denial that prevented the Petitioner from presenting evidence of disminished capacity (during guilt/innocence phase) in conflict with <u>Ruffin v. State</u>, holding that the Petitioner could present disminished capacity evidence in the same type of situation that the Petitioner was in at trial?

2· Is the Sixth District Court of Appeals' ruling erroneous for allowing the trial court to deny the Petitioner a jury instruction on the requested diminished capacity theory?

3· When the State failed to properly link Petitioner to the enhancement paragraphs, did the Sixth District Court of Appeals unreasonably hold that Petitioner and Coleman's testimony (showing that Petitioner has been to prison multiple times) is sufficent to uphold the prior enhancement convictions, and is this ruling in conflict with <u>Prihada v. State</u>?

Is the Sixth District Court of Appeals' ruling, that ultimately upheld the denial that prevented the Petitioner from presenting evidence of disminished capacity (during guilt/innocence phase) in conflict with Ruffin v. State [270 S.W.3d 586 (Tex.Crim. App. 2008)], holding that the Petitioner could present disminished capacity evidence in the same type of situation that the Petitioner was in at trial?

Texas law does not recognize diminished capacity as an affirmative defense. Smith v. State, 314 S.W.3d 576, 590 (Tex.App. --Texarkana 2010, no pet)(citing Ruffin v. State, 270 S.W.3d 586 (Tex.Crim.App. 2008)). If evidence of a defendant's mental illness does not directly rebut a defendant's mens rea, a trial court is not required to give it. Mays v. State, 318 S.W.3d 368 (Tex.Crim.App. 2010). However, the Petitioner did put on evidence to rebut mens rea. In so doing, he was entitled to have the jury consider his evidence because the Petitioner [has the] right to present a defense that generally includes the due-process right to the admission of competant, reliable, exculpatory evidence to rebut any of the State's alleged elements. See Ruffin v. State, 270 S.W.3d 586, 594 (Tex.Crim.App. 2008).

In Ruffin, this Honorable Court agreed with the dissenting Justices in Clark [548 U.S. at 792-96] and held that "a per se ban upon expert mental disease testimony to rebut mens rea unduly restricts, if not prevents, the jury" from hearing "evidence of a defendant's history of mental illness" to rebut the

State's case-in-chief. Ruffin, supra, 270 S.W.3d at 395, 396.

In this case the testimony of the psychologist was that Petitioner was unable to read, write, complete simple mathematics problems, identify his parents occupations, or recite his birth date. Coupled with this was the statement that he had told the psycologist that he was "psycho," that he heard voices which urged him to Hill himself, and that he usually took antipsychotic medication, **which he stopped taking prior to the offense.** The psychologist testified that Petitioner had the mental capacity of a teenager, while his cousin Dwayne Coleman testified that he had the mental capacity of an 8 to 10 year old. There is testimony from Petitioner that he was not aware that the people chasing him were police officers. The Sixth District Court of Appeals, presumably based on this testimony of the psychologist, Petitioner's cousin, and Petitioner, finds that the evidence established that Petitioner had diminished capacity. But then, despite this finding, the Sixth District Court of Appeals goes on to find that the Petitioner had the ability to make independent decisions, "albeit ...poor ones." See Henry v. State Slip Opinion at 6-8, No. 06-14-00130-CR (Tex.App.--6th Dist. April 16, 2015).

Axiomly, this case is squarely on point with Ruffin v. State, 270 S.W.3d 586, 593 (Tex.Crim.App. 2008). The Petitioner did not have the required state of mind at the time of the offense. "As with the other elements of the offense, relevant evidence may be presented **which the jury may consider** to negate the mens rea element[,]...includ[ing] evidence is admissible under the Texas Rules of Evidence. Id. at 596 (emphasis added)(quoting Jackson

page 2

v. State, 160 S.W.3d 568, 574-75 (Tex.Crim.App. 2005)). Evidence of whether Petitioner suffers from diminished capacity sufficient to determine that Petitioner does not have culpable mens rea is a fact issue to be determined by the jury. In fact, before trial even started, there was a discussion concerning whether the issue of mental illness could be brought up during guilt/innocence, the State agreed with the Petitioner and believed that it could be presented before the jury also. See RR2, P.10.

The finding by the trial court that the evidence of diminished capacity should not be allowed because it could be confusing to the jury is out the window in this case because the Texas Rules of Evidence 403 provides a mechanism to exclude specific expert testimony that is unfairly complex. Ruffin, supra at 595. In this case, Dr. Bell and Mr. Colmans testimony is admissible and is not unfairly complex, rather, it is very helpful for the jury to determine the facts of this case at hand. Id.

The Petitioner believes that Dr. Bell and Mr. Colemans testimony should have been exposed to the jury, on the behalf of the Petitioner's sole defense, against that of what the State's entire case is about. Even the State believed that the Petitioner could present the diminished capacity evidence to the jury. RR2, P. 10.

Finally, under the Texas Rules of Appellate Procedure, rule 66.3(a), the Petitioner insures this Honorable Court that the Sixth District Court of Appeals' ruling is in conflict with this Honorable Court's holding in Ruffin v. State, on the same issue. Further, this question is worthy of relief in the form of granting

this petitioner for further review, pertaining to this question.

## QUESTION TWO RESTATED

Is the Sixth District Court of Appeals' ruling erroneous for allowing the trial court to deny the Petitioner a jury instruction on the requested diminished capacity theory?

The Sixth District Court of Appeals held that "we find no error in either the trial Court's exclusion of evidence relating to Henry's diminished capacity during guilt/innocence or its denial of Henry's requested Jury instruction." Henry v. State, slip Opinion at page 8, No. 06-14-00130-CR (Tex.App.--6th Dist. April 16, 2015). The Sixth Disrtict Court of Appeals incorporated it's findings in prior discussion in addressing Petitioner's first ground, but never fully addressed whether Petitioner was in fact entilted to a jury instruction on the diminished capacity issue. Therefore, this Honorable Court should take the following into consideration as this Honorable Court exercises it's supervisory power pursuant to the Texas Rules of Appellate Procedure 66.3(f).

Because the Petitioner was denied his right to expose the jury to evidence of Petitioner's diminished capacity, he would have been entitled to a jury charge on the issue of diminished capicity. See Dugar v. State, ___ S.W.3d ___ (April 9, 2015) (2015 Tex.App. Lexis 3519). The trial court must give a requested instrustion on every defensive issue that is raised by the evidence. Krajcovic v. State, 393 S.W.3d 282, 286 (Tex.Crim.App. 2013).

In Dugar v. State [supra], the Houston District Court of Appeals held "the error was not harmless because defendant had

only a single defense and when the trial court denied the instrution the jury was given a charge that contained no vehicle with which it could acquit him as he admitted shooting the victim." Id. Slip Opinion at page 1. This Houston District Court determined "when decidign whether a defensive issue has been raised by the evidence, a court must rely on its own judgment, formed in the light of its own common sense and expercience, as to the limits of rational inference from the facts that have been proven. Shaw v. State, 243 S.W.3d 647, 657-58 (Tex.Crim. App. 2007). The defendant is entitled to an instruction on a defense when there is legally sufficient evidence to raise the defense, regardless of whether the evidence supporting the defense is weak or contradicted, and even if the trial court is of the opinion that the evidence is not credible. Id. Whether the record contains such evidence is a question of law, which means that we do not apply the usual rule of appellate deference to the trial court's ruling. Id. 'Quite the reverse, we view the evidence in the light most favorable to the defendant's requested submission.' Ruffin v. State, 207 S.W.#d 779, 782 (Tex.Crim.App. 2006)." See Dugar, Supra, slip opinion at page 6.

The evidence in the record clearly shows that the Petitioner's sole defense was the presentation of the diminished capacity evidence. And further, the Petitioner's state of mind is a question of fact that must be determined by the jury. Brown v. State, 122 S.W.3d 790, 800 (Tex.Crim.App. 2003).

First, Bell testified that Petitioner is mentally retarded and mentally ill. His report tells us that Petitioner has a Psy-

chotic disorder, which includes schizophrenia and bipolar disorder—hearing voices and having hallucinations. RR4, 74, 75.

Next, Bell further testified that the interplay between the mental illness coupled with mental retardation is that there is multiple disability, and it affects Petitioner's judgment, impulse control, and **understanding the real world**. RR4, 75, 76.

Then the Petitioner (at punishment) testified that he himself has been to Terrell (state hospital), "way back sometimes," after he was grown. RR4, 97. And because of the Petitioner's hallucinations and not being able to understand the real world, Petitioner thought that the police behind him was "some dude from Wal-mart." RR4, 99. This piece of evidence alone shows why Petitioner sped up when the vehicle behind Petitioner rushed up to the Petitioner's vehicle. Had the jury seen this full extent of evidence at trial, and have been given the instruction requested by the defense, the jury would have definitely produced a different verdict at hand.

Finally, the State (as well with the Sixth District Court of Appeals) improperly stated that the Petitioner knew that he was running from the police, that was based off of the video tape that was played before the jury. See <u>Henry v. State</u>, Slip opinion at page 7, No. 06-14-00130-CR (Tex.App. --6th Dist. April 16, 2015. Nevertheless, when the State questioned about whether he was running from the police, Petitioner answered "that's what you say, that's what they say." RR4, 107. The entire time the voices, in Petitioner's mind, was telling him (and the Petitioner believed) that the police was a "dude from Wal-mart" who wants to call the

police.

In conclusion, the Petitioner's proper vehicle was a jury instruction on the diminished capacity evidence, and just like Dugar, **this error was not harmless!** Being in the favor of the Petitioner, the Petitioner is entitled to the jury instruction of diminished capacity. Therefore, the Sixth District Court of Appeals' holding is erroneous and is in conflict with Dugar v. State. Finally, the Petitioner respectfully implores this Honorable Court to grant his Petition for Discretionary Review on the present question at hand.

## QUESTION THREE RESTATED

When the State failed to properly link Petitioner to the enhancement paragraphs, did the Sixth District Court of Appeals unreasonably hold that Petitioner and Mr. Coleman's testimony (showing that Petitioner has been to prison multiple times) is sufficent to uphold the prior enhancement convictions, and is this ruling in conflict with Prihada v. State, 352 S.W.3d 796 (Tex.App. [4th Dist] san antonio 2011)?

The Sixth District Court of Appeals held that during the punishemnt phase, Petitioner admitted that he was **convicted of** and went to prison for (1) aggravtated assault of police officer and (2) aggravated robbery." See Henry v. State, slip Opinion at page 11, No. 06-14-00130-CR (Tex.App.--6th Dist. April 16, 2015). (Emphasis added). This holding is completely unreasonable when mirrored with the true facts of the case.

The Petitioner's Attorney has looked through the testimony of the Petitioner, and axiomly found **no area or testimony admit-**

ted being "convicted of" these offenses! See Petitioner motion for rehaering on page 6. Petitioner was never asked about the convictions, only whether he had been to or went to prison for certain offenses. Petitioner readily admitted he had been to prison several times. Petitioner admitted that he had pleaded guilty to four different assualts, but never was he asked specifically about the offenses used for enhancement. RR4, P. 111. There is a distinction between being convicted of an offense and having been to prison for an offense. Likewise, Coleman's testimony was that Petitioner had spent a vast majority of his life in prison, and that he was imprisoned in 1989 for aggravated assault and again in 2002 for aggravated robbery, not whether Petitioner had been convicted. See Henry v. State, slip opinion at page 11, No. 06-14-00130-CR (Tex.App.--6th Dist. April 16, 2015).

Coupled with Petitioner's plea of "Not True," it was incumbent upon the state to prove that Petitioner had been convicted of these offenses, not merely incarcerated for them. Petitioner's legal name is Alvin Peter Henry, Jr. None of the Judgments, including the ones used for enhancement, identify Alvin Peter Henry named therein as the same person on trial in this case.

Also, the State argued in closing, and the Court unreasonably adopts, in it's opinion the proposition that Petitioner has stipulated to his prior convictions. Petitioner's attorney to the prior convictions, although it is not clear that he stipulated that he was the same person who was convicted, **only** that the judgments and sentences were valid certified copies. When later entered a plea of "Not True," it became incumbent upon the State

page 8

to prove that the person on trial is the same person convicted and sentenced in each of the prior convictions.

The Petitioner presents Prihada v. State, 352 S.W.3d 796 (Tex.App. [4th Dist] san antonio 2011), to this Honorable Court because the following completely conflicts and contradicts the ruling in the Petitioner's case at hand:

The San Antonio District Court held: "with regard to prihada [and his assertion] that the State failed to prove the prior conviction, the State is required to prove beyond a reasonable doubt that: (1) a prior conviction exists; and (2) the defendant is linked to that conviction. Flowers v. State, 220 S.W.3d 919, 921 (Tex.Crim.App. 2007). ... Based onexisting precedent, we note that a certified copy of the judgement standing alone is insufficient to prove a prior conviction, and this is true even if the name on the judgment is the same as the defendant in trial. Back v. State, 719 S.W.2d 205, 210 (Tex.Crim.App. 1986); Menefee v. State, 928 S.W.2d 274, 278 (Tex. App. --Tyler 1996, no pet).

"In the instant case, no such document were admitted into evidence, and none of the documents signed by Prihoda in the instant case contains the signature of the trial judge who presided over the signature of the trial judge who presided over the punishment hearing. Although we must view the evidence in the light most favorable to the trial court and acknowledge that the trial court "could" have compared the signature on the judgment to the signatures on the documents in the file, relying on such a comparasion in this case given the record as a whole raises serious concerns. Even if we accept that the trial judge made a compara-

page 9

son of Prihoda's signature, we hold that the evidence presented in this case **failed to sufficiently link Prihoda to the prior conviction.** We note that no evidence was introduced to show that Prihoda's name was sufficiently unigue to enable the trial court to rely on his name as a evidentiary link, and Officer Salazar's vague response to a single question about a prior DWI would not enable the trial court to fit these pieces of evidence together to link Prihoda beyond a reasonable doubt, to the prior conviction." See <u>Prihoda v. State</u>, 352 S.W.3d 796, 807,809-10 (Tex. App. [4th Dist] San Antonio 2011)(remanded the cause for a new punishment hearing according to the Texas Code of Criminal Procedures art. 44.29 (west supp. 2010))(Emphasis added).

Considering the facts of both cases, Presented herein, the Petitioner believes that Prihoda's holding conflicts with the Sixth District Court of Appeals' holding within Petitioner's case. The State failed to link the Petitioner to the enhancments beyond a reasonable doubt, and the Sixth Court of Appeals is unreasonable to support it. In fact, the Petitioner's legal name, that conflicts with the name on the enhancement documents, **alone** casts serious doubt to the sufficient of the enhancements.

The Petitioner respectfully implores this Honorable Court to settle the Conflicting rulings between Prihoda's case and the Petitioner's, pursuant to the Texas Rules of Appellate Procedure 66.3(a). And grant Petitioner's Petition for Discretionary Review for a precedent on this issue is needed.

## PRAYER FOR RELIEF

The Petitioner prays that this Honorable Court will GRANT his Petition for Discretionary Review pertaining to Petitioner's three questions.

## INMATE DECLARATION

I, Alvin Peter Henry, Jr., TDCJ #01935874, being incarcerated in the TDCJ-CID Coffield unit in Anderson County, Texas, declares that the foregoing is true and correct under the penalty of perjury. EXECUTED THIS DAY OF JULY 7, 2015.

ALVIN PETER HENRY, Jr.
#01935874-Coffield unit
2661 FM 2054
Tenn.Colony, Tx. 75884
Pro se.

## PROOF OF MAILING

I, Alvin Peter Henry, Jr., TDCJ #01935874, being incarcerated in the TDCJ-CId Coffield unit in Anderson County, Texas, declares that I have placed my Petition for Discretionary Review in the internal mailing system, at the Coffield unit, on July 7, 2015. This is true and correct under the penalty of purjury.
EXECUTED THIS DAY OF JULY 7, 2015.

ALVIN PETER HENRY, Jr.
#019935874-Coffield unit
2661 FM 2054
Tenn.Colony, Tx. 75884
Pro se.

page 11



# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-14-00130-CR

_____

ALVIN PETER HENRY, JR., Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 6th District Court
Lamar County, Texas
Trial Court No. 25589

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Burgess

# OPINION

After allegedly stealing steaks from a local Walmart on Christmas Eve in 2013, Alvin Peter Henry, Jr., in an effort to avoid apprehension, led the Reno Police Department on a dangerous, sixteen-minute, high-speed chase. Reaching speeds of 120 miles per hour on roads crowded with holiday travelers, Henry sped through intersections, stop signs, and residential neighborhoods; drove for considerable lengths of time in oncoming lanes of travel; and forced many vehicles off the roadway as a means of avoiding a head-on collision. The chase ended when Henry led officers to his own home after police-deployed spike strips shredded the fleeing vehicle's front tire. A jury watched the dash-cam video recording of the dangerous chase, convicted Henry of evading arrest with a motor vehicle, and entered a finding that his vehicle was used as a deadly weapon. The jury also found that Henry was previously convicted of two felony offenses, resulting in Henry's enhanced sentence of sixty years' imprisonment.

Based on findings by a psychologist that Henry has a low intelligence quotient (IQ) and suffers from psychotic disorders, Henry argues that the trial court erred (1) in failing to allow him to introduce evidence of his diminished capacity during the guilt/innocence phase of his trial and (2) in refusing to submit a jury instruction regarding the effect of his diminished capacity. Henry also argues that during punishment, the State failed to prove that he was the same person who had committed the extraneous offenses introduced during punishment, including the two prior felony offenses used to increase his range of punishment.

We find that the trial court did not abuse its discretion in disallowing evidence of or a jury instruction on Henry's diminished capacity. We also find that the evidence was legally sufficient

2

to link Henry to the extraneous offenses introduced in the punishment phase of his trial. Accordingly, we affirm the trial court's judgment.

## I. The Trial Court Did Not Abuse its Discretion in its Diminished-Capacity Rulings

### A. The Diminished-Capacity Evidence

Prior to his trial, Henry was examined by psychologist David Bell, who authored a written report finding that Henry was competent to stand trial, but that he was "both mentally retarded and mentally ill." Henry was unable to read, write, complete simple mathematics problems, identify his parents' occupations, or recite his birthdate. Henry told Bell that he collected a "disability check for being 'slow'" and that he had "an overseer, named Dewayne Coleman." According to Bell's report, Henry said that he was "psycho," that he heard voices which urged him to kill himself, and that he usually took antipsychotic medication, which he stopped taking prior to the offense.

During Bell's interview, Henry claimed that he had taken another, unnamed person to Walmart and that the other person had stolen the steaks from Walmart.[1] After the deed was done, Henry said that he "panicked and took off, refusing to stop." Henry told Bell that he "has been locked up much of his life," that he was very afraid of prison, and that he wished to go to a psychiatric hospital instead. Bell's written report concluded that Henry was "suffering from Mental Retardation and a Psychotic Disorder at the time of the offense," but that he was "NOT deprived by these illnesses of the ability to judge right from wrong."

---

[1] Henry was the sole occupant of the vehicle during the high-speed chase. Police officers found the steaks in the vehicle Henry was driving.

3

Armed with Bell's reports, Henry asked the trial court to hold a hearing to address the admissibility of his diminished capacity before the jury. During Henry's offer of proof,[2] Bell testified that Henry had a mental age of "[f]ourteen or fifteen" and that his mental illness impacted his judgment and impulse control. However, since Bell only examined Henry for thirty to forty-five minutes, Bell testified that he was "not positive about [Henry's] mental illness," but explained that such a mental illness would make one "more prone to not understand what's going on[,] to do things like panic," and "to just do something really impulsive without regard to where it would lead [him]." Bell confirmed that Henry understood the difference between right and wrong, that his mental illness was not involved in any of the events leading to the arrest, and that Henry ran from the police because he was hoping that he would not get caught.

Henry testified that on the day of the offense, he drove Linda Jones and Sam O'Neil to Walmart in Linda's car and that he stole nothing.[3] Henry's explanation as to why he fled was inconsistent. Henry first said, "I really didn't know the police were behind me until I got home," then testified that he thought someone was after him, and later admitted that he fled because a Walmart employee told him that he was going to call the police. Henry also claimed that he was unaware that he could get into trouble for fleeing and that he heard voices instructing him to drive home where he would be safe. Referring to his prior history of incarceration, Henry added, "[I]f I would have stopped right there on that road, [the police] probably would have killed me, the kind of record I got. That's why I ran." Coleman, Henry's cousin and caretaker, testified that he

---

[2]During the pretrial hearing, all parties agreed that Henry's offer of proof would consist of the testimony elicited during the punishment phase of the trial.

[3]It is unclear whether Henry had a driver's license.

4

believed Henry operated at the same level as an eight- to ten-year-old child and that he had been hearing voices for a long time. Coleman testified that Henry lived by himself and could fix some meals for himself.

## B.     The Trial Court's Rulings

The trial court disallowed any testimony regarding mental retardation and mental illness, ruling that such evidence would not be relevant to any issue in the case and, if allowed, would confuse the jury by interjecting concepts of sanity and competence.[4]

At the pretrial hearing, Henry also requested that the following instruction be given to the jury:

> You have heard evidence that the defendant had a mental disease or defect and, as a result, did not have the culpable mental state these instructions have told you the state must prove. This case does not involve a claim by the defendant that he was insane at the time of the offense.

> If you find the defense evidence credible, you may consider it in deciding whether the state has proved the defendant had the required culpable mental state.

The trial court declined to include the instruction.

## C.     Analysis

We review the trial court's decision to exclude evidence of mental illness for an abuse of discretion. *Jackson v. State*, 160 S.W.3d 568, 575 (Tex. Crim. App. 2005). Likewise, we also review a trial court's decision to not submit an instruction in the jury charge for an abuse of discretion. *Reyes v. State*, 422 S.W.3d 18, 28 (Tex. App.—Waco 2013, pet. ref'd) (citing *Wesbrook v. State*, 29 S.W.3d 103, 122 (Tex. Crim. App. 2000)); *see Bridges v. State*, 389 S.W.3d

---

[4]Henry clarified that he was not raising an insanity defense.

5

508, 511 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *Hubbard v. State*, 133 S.W.3d 797, 799 (Tex. App.—Texarkana 2004, pet. ref'd). "An abuse of discretion is shown only when the trial court's ruling lies outside the 'zone of reasonable disagreement.'" *Hernandez v. State*, 438 S.W.3d 876, 878 (Tex. App.—Texarkana 2014, pet. ref'd) (quoting *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g)).

"Texas does not recognize diminished capacity as an affirmative defense." *Smith v. State*, 314 S.W.3d 576, 590 (Tex. App.—Texarkana 2010, no pet.) (citing *Ruffin v. State*, 270 S.W.3d 586, 593 (Tex. Crim. App. 2008); *Jackson*, 160 S.W.3d at 573). "Rather, it is a 'failure-of-proof defense in which the defendant claims that the State failed to prove that the defendant had the required state of mind at the time of the offense.'" *Id.* (quoting *Jackson*, 160 S.W.3d at 573–74; *Ruffin*, 270 S.W.3d at 593). "As with the other elements of the offense, relevant evidence may be presented which the jury may consider to negate the mens rea element[,] . . . includ[ing] evidence of a defendant's history of mental illness," provided that the evidence is admissible under the Texas Rules of Evidence. *Jackson*, 160 S.W.3d at 574. However, as the Texas Court of Criminal Appeals stated in *Jackson*,

> [P]resenting evidence of mental illness does not then allow the defense to argue that the defendant is absolutely incapable[,] i.e., does not have the capacity to intentionally or knowingly perform an act. There is simply no defense recognized by Texas law stating that, due to the defendant's mental illness, he did not have the requisite mens rea at the time of the offense because he does not have the capacity, or is absolutely incapable of ever forming that frame of mind.

*Jackson*, 160 S.W.3d at 574–75.

Henry argues that because the diminished-capacity evidence was relevant to his capacity to formulate the requisite mens rea, the trial court abused its discretion in excluding it. Yet, Bell

testified that Henry has the mental capacity of a teenager, that he was sane at the time of the offense, that he was competent to stand trial, and that his mental illness was not involved in any of the events leading to his arrest. According to Bell, who was "not positive" about whether Henry actually had a mental illness, the result of Henry's diminished capacity was poor judgment and a lack of impulse control. Bell's report documented Henry's statement that he "panicked and took off, refusing to stop." Bell concluded that Henry ran from the police because he was hoping to evade arrest.

The video recording of the chase showed that Henry's speed quickly escalated after the police began chasing him and that he began driving erratically once patrol units activated their lights and sirens. Henry's testimony (1) that he left Walmart after an employee threatened to call the police, (2) that he thought someone was after him, and (3) that he ran because he believed the police would have killed him due to his criminal record confirmed both that he knew the police were chasing him and that he made the decision to flee. Coleman's testimony that Henry operated at the same level as an eight- to ten-year-old child and that he had been hearing voices for a long time did not establish that Henry lacked the intent to evade arrest.

If evidence of a defendant's mental illness does not directly rebut a defendant's culpable mens rea, a trial court is not required to admit it. *Mays v. State*, 318 S.W.3d 368, 382 (Tex. Crim. App. 2010). While the evidence here established that Henry had diminished capacity, it also established that Henry had the ability to make independent decisions—albeit, at times, poor ones. *See Wagner v. State*, 687 S.W.2d 303, 312 (Tex. Crim. App. 1984) (op. on reh'g) ("Lack of normal impulse control is simply not a circumstance recognized by the Legislature to diminish the criminal

7

responsibility of an accused . . . ."), *superseded by statute as stated in Jackson*, 160 S.W.3d at 573.

Here, Henry made the decision, whether by impulse or otherwise, to engage the police in a sixteen-minute, high-speed chase. Due to the nature of the evidence presented in this case, we cannot say that the trial court abused its discretion in disagreeing with Henry's conclusion that the evidence of his mental retardation and mental illness demonstrated that he was incapable of forming the requisite mens rea.[5] Accordingly, we find no error in either the trial court's exclusion of evidence relating to Henry's diminished capacity during guilt/innocence or its denial of Henry's requested jury instruction. We overrule Henry's first two points of error.

## II. The Evidence Establishing Henry's Prior Convictions Is Legally Sufficient

During a pretrial hearing, the parties offered and the trial court approved the following stipulation:

> [By the State]: Judge, I had an off-the-record conversation with [Henry's counsel] as it relates to Mr. Henry's prior convictions and his judgment and sentences. [Henry's counsel] has advised me that I will not need to have the fingerprint folks here to prove up those judgment and sentences. I do have certified copies of them. We're going to offer them as stipulated -- as they're valid prior judgment and sentences.
>
> [By Henry's counsel]: That is correct, Your Honor. There's no sense in going through that exercise.

---

[5]Henry's attorney made the following closing argument during the guilt/innocence phase of the trial:

> Ladies and gentlemen, I'm not going to insult your intelligence and suggest you find this man not guilty. Of course, he's guilty. I mean, that's apparent. What I would ask you to do is to wait until you've heard the evidence on punishment before you make a decision regarding what you're going to do on that. [The State is] absolutely correct. And it will become clear to you on punishment why we went through this exercise. Thank you very much.

8

Thus, without objection, the State introduced several judgments of conviction against Alvin Peter Henry.[6] However, during punishment, Henry pled "not true" to the State's enhancement

[6]Pursuant to the stipulation, the State introduced:

(1) a judgment revoking community supervision issued by the 102nd Judicial District Court of Red River County, Texas, on February 28, 1979, which recited that on November 14, 1978, "Alvin (Peter) Henry" was convicted of theft;

(2) a judgment revoking community supervision issued by the 102nd Judicial District Court of Red River County, Texas, on February 28, 1979, which recited that on November 14, 1978, "Alvin (Peter) Henry" was convicted of aggravated assault;

(3) a judgment issued by the 102nd Judicial District Court of Red River County, Texas, on March 29, 1982, which recited that "Alvin Peter Henry" was convicted of possession of a prohibited weapon;

(4) a judgment issued by the 102nd Judicial District Court of Red River County, Texas, on March 29, 1982, which recited that "Alvin Peter Henry" was convicted of burglary of a building;

(5) a judgment issued by the 102nd Judicial District Court of Red River County, Texas, on March 2, 1984, which recited that "Alvin Peter Henry" was convicted of burglary of a building;

(6) a judgment issued by the 102nd Judicial District Court of Red River County, Texas, on March 3, 1989, which recited that "Alvin Peter Henry" was convicted of criminal mischief;

(7) a judgment issued by the 102nd Judicial District Court of Red River County, Texas, on March 3, 1989, which recited that "Alvin Peter Henry" was convicted of aggravated assault;

(8) a judgment issued by the 102nd Judicial District Court of Red River County, Texas, on June 26, 2002, which recited that "Alvin Peter Henry" was convicted of aggravated robbery;

(9) a judgment issued by the 339th District Court of Harris County, Texas, on August 28, 2009, which recited that "Henry, Alvin Peter" was convicted of possession of less than one gram of cocaine;

(10) a judgment issued by the County Court of Red River County, Texas, on June 28, 2010, which recited that "Alvin Peter Henry" was convicted of assault causing bodily injury;

(11) a judgment issued by the County Court of Red River County, Texas, on June 28, 2010, which recited that "Alvin Peter Henry" was convicted of assault causing bodily injury family violence;

(12) a judgment issued by the County Court of Red River County, Texas, on June 28, 2010, which recited that "Alvin Peter Henry" was convicted of assault causing bodily injury family violence; and

(13) a judgment issued by the County Court of Red River County, Texas, on June 28, 2010, which recited that "Alvin Peter Henry" was convicted of assault causing bodily injury.

allegations. Because he is Alvin Peter Henry, *Jr.*, Henry argues that the judgments of conviction failed to establish that he is the same person that was convicted of all of the prior offenses.

"'To establish that a defendant has been convicted of a prior offense, the State must prove beyond a reasonable doubt that (1) a prior conviction exists [ ] and (2) the defendant is linked to that conviction.'" *Reese v. State*, 273 S.W.3d 344, 347 (Tex. App.—Texarkana 2008, no pet.) (quoting *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007)); *see Cooper v. State*, 363 S.W.3d 293, 296 (Tex. App.—Texarkana 2012, pet. ref'd). "No specific document or mode of proof is required to prove these two elements." *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007); *see Littles v. State*, 726 S.W.2d 26, 30–32 (Tex. Crim. App. 1984) (op. on reh'g). In proving prior convictions, identity often includes the use of a combination of identifiers, and "[e]ach case is to be judged on its own individual merits." *See Littles*, 726 S.W.2d at 30–32. The totality of the circumstances determines whether the State met its burden of proof. *Flowers*, 220 S.W.3d at 923.

A defendant's stipulation to the existence of prior convictions is sufficient to link the defendant to those convictions. *See Cooper*, 363 S.W.3d at 297 (citing *Miller v. State*, 33 S.W.3d 257, 262 (Tex. Crim. App. 2000) (finding counsel's statement that defendant was already serving two sentences sufficient to link defendant to two prior convictions); *see also Woods v. State*, 398 S.W.3d 396, 400 (Tex. App.—Texarkana 2013, pet. ref'd) ("Where a defendant stipulates to the existence of the prior convictions, he makes a judicial admission which removes the need for the State to provide proof of that conviction.") (citing *Bryant v. State*, 187 S.W.3d 397, 400 (Tex. Crim. App. 2005)).

10

Henry stipulated to his prior convictions, relieving the State from bringing "the fingerprint folks" to trial. Henry's plea of "[n]ot true" to the State's enhancement allegations served only to require the State to prove the enhancement allegations. At no point during the trial did Henry indicate any discomfort with his stipulation to the prior offenses that were not used to enhance his punishment. Thus, we find that Henry's stipulation sufficiently linked him to these non-enhancing offenses.

However, Henry's plea of "[n]ot true" to the State's enhancement allegations required the State to prove the enhancements notwithstanding Henry's stipulation. *See Cooper*, 363 S.W.3d at 296. Thus, the State was required to present evidence linking Henry to a March 3, 1989, conviction for aggravated assault and a June 26, 2002, conviction for aggravated robbery.

During the punishment phase of his trial, Henry testified that he had been incarcerated many times. He admitted that he was convicted of and went to prison for (1) aggravated assault of a police officer and (2) aggravated robbery.[7] Coleman also testified that Henry had spent the vast majority of his life in prison and that Henry was imprisoned in 1989 for aggravated assault and again in 2002 for aggravated robbery. We find that the testimony of Henry and Coleman, in tandem, sufficiently linked Henry to the prior convictions used to enhance his punishment. Accordingly, we overrule Henry's last point of error.

---

[7]Henry also testified that he was incarcerated for theft and burglary of a building.

11

## III. Conclusion

We affirm the trial court's judgment.

Ralph K. Burgess
Justice

Date Submitted: March 4, 2015
Date Decided: April 16, 2015

Publish