

# NUMBERS 13-11-00785-CR; 13-11-00786-CR; & 13-11-00791-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**MICKEY BOSWELL,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

## On appeal from the 319th District Court
## of Nueces County, Texas.

## MEMORANDUM OPINION

### Before Justices Benavides, Perkes, and Longoria
### Memorandum Opinion by Justice Perkes

Appellant Mickey Boswell appeals his convictions in three separate causes. In cause number 13-11-00786-CR, a jury convicted appellant for failing to register as a sex offender, enhanced to a first degree felony, and the trial court sentenced appellant to twenty years' imprisonment. On the basis of his indictment in that cause, the State

moved to revoke community supervision in: (1) cause number 13-11-00791-CR, involving three counts of failure to register as a sex offender, enhanced to second degree felonies; and (2) cause number 13-11-00785-CR, involving charges of theft and unauthorized use of a motor vehicle, enhanced to first and second degree felonies, respectively.[1] The trial court found the alleged violations to be true, adjudicated appellant guilty, and sentenced him to fifty years' imprisonment for theft, twenty years for the unauthorized use of a mother vehicle, and twenty years for each failure to register count. The trial court ordered all sentences to run concurrently.

By seven issues,[2] appellant argues: (1) the receipt of other evidence by the jury warranted mistrial; (2) the trial court committed reversible jury charge error; (3) application of the quarterly registration statute constituted an ex post facto violation; (4) the theft conviction was not supported by evidence; (5) his convictions for theft and unauthorized use of a motor vehicle constituted double jeopardy; (6) his sentence for the theft conviction was improperly enhanced; and (7) his convictions for three counts of violating the registration requirements were improper. We affirm.

---

[1] Appellate Cause No. 13-11-00785-CR is the appeal from trial cause number 09-CR-1082-G. Appellate Cause No. 13-11-00786-CR is the appeal from trial cause number 10-CR-4228-G. Appellate Cause No. 13-11-00791-CR is the appeal from trial cause number 09-CR-1006-G. The State's motions to revoke were carried with the case in trial cause number 10-CR-4228-G. Our analysis allows us to consider them in a consolidated opinion.

[2] The State asserts that many issues presented by appellant are multifarious. We agree. A multifarious issue "is one that embraces more than one specific ground." *Stults v. State*, 23 S.W.3d 198, 205 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). "By combining more than one contention in a single point of error, an appellant risks denial on the ground that the issue is multifarious and presents nothing for review." *Prihoda v. State*, 352 S.W.3d 796, 801 (Tex. App.—San Antonio 2011, pet. ref'd). We have discretion to "refuse to review a multifarious issue or we may elect to consider the issue if we are able to determine, with reasonable certainty, the alleged error about which the complaint is made." *Gilley v. State*, 418 S.W.3d 114, 119 n. 19 (Tex. Crim. App. 2014) (quoting *Prihoda*, 352 S.W.3d at 801). To the extent we can discern an issue in the brief, we will address the issue in the interest of justice.

## I. BACKGROUND

In 1994, appellant was convicted of two counts of indecency with a child by contact, second degree felonies. *See* TEX. PENAL CODE ANN. § 21.11(a)(1) (West, Westlaw through Chapter 46 2015 R.S.). As a result of his conviction, appellant was required to register as a sex offender. In 2004, appellant was convicted for failure to comply with sex offender registration requirements and was sentenced to two years' imprisonment.

In 2009, appellant was indicted for three counts of violating the sex offender registration requirements. *See* TEX. CODE CRIM. PROC. ANN. art. 62.055, 62.057 (West, Westlaw through Chapter 46 2015 R.S.). That same year, appellant was also indicted for felony theft and unauthorized use of a motor vehicle. *See* TEX. PENAL CODE ANN. §§ 31.03, 31.07. In each of the 2009 causes, appellant pleaded guilty pursuant to a plea bargain agreement, and waived his right to appeal. The trial court deferred adjudication in those cases and placed appellant on community supervision for concurrent periods of ten years. The "Conditions of Community Supervision" provided that appellant must commit no offense against the laws of this state, and required appellant to comply with all sex offender registration requirements. Appellant was also required to serve 360 days in the Nueces County Jail.

On March 22, 2010, upon his release from jail, appellant was notified by way of a "Pre-Release Notification Form" that he was required to register annually as a sex offender. When appellant registered with the Corpus Christi Police Department's ("CCPD") Sex Offender Registration Division on March 29, 2010, a CCPD employee informed appellant that he was required to register every ninety days or "quarterly."

3

Appellant reported in person to CCPD on April 29 and June 22 because he did not have a driver's license to confirm his residence. On each occasion he reported to CCPD, appellant signed a sex offender verification form stating he was required to register every ninety days. Appellant was arrested on October 30 because he had not registered within ninety days of June 22, 2010.

Appellant was indicted in cause number 10-CR-4228-G for failing to register within ninety days, *see* TEX. CODE CRIM. PROC. ANN. art. 62.058, and the State filed motions to revoke community supervision in trial cause numbers 09-CR-1006-G and 09-CR-1082-G, which were carried with the case. Following a jury trial, the jury returned a guilty verdict. The trial court further found that appellant violated the terms of his community supervision. This appeal followed.

## II. JURY DELIBERATIONS

### A. Receipt of Other Evidence

By his first issue, appellant argues "the trial court erred in denying [his] motion for mistrial during the jury's deliberations [in cause 10-CR-4228-G] after discovering a juror became an unsworn witness against [appellant]." Specifically, appellant maintains that the jury received "other evidence" detrimental to appellant during deliberations and that he was deprived of his right to an impartial jury.

#### 1. Pertinent Facts

The jury heard evidence regarding three separate addresses that appellant reported as his residence. After retiring to deliberate, the jury sent four notes to the trial judge. The second note read as follows:

4

One jury member owns property that [appellant] gave as his address. It is a commercial property. This jury says it represents dishonesty on [appellant's] part. Are we to allow or dismiss this comment?

Appellant moved for a mistrial. The trial court denied the motion, but directed the jury in writing "Do not consider anything not in evidence. Refer to paragraph 10, subpart 4 [of the jury charge]." The referenced portion of the jury charge reads: "During deliberations, the jury may not . . . consider or discuss matters not in evidence including personal knowledge or information about any fact or person connected with the case." Appellant argues the jury note establishes that new evidence was received by the jury and that no instruction could cure the error.

### 2. Standard of Review and Applicable Law

A mistrial is required only in extreme circumstances where the prejudice is incurable. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). Prejudice is incurable when it "is of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors." *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). We review the trial court's denial of a motion for mistrial for an abuse of discretion, viewing the evidence in the light most favorable to the trial court's ruling, and considering only those arguments before the court at the time of the ruling. *Id.* We must uphold the ruling if it was within the zone of reasonable disagreement. *Ocon*, 284 S.W.3d at 884.

A mistrial is an extreme remedy, and should be granted "only when residual prejudice remains" after less drastic alternatives are explored. *Id.* (quoting *Barnett v. State*, 161 S.W.3d 128, 134 (Tex. App.—Fort Worth 2005), *aff'd*, 189 S.W.3d 272 (Tex.

5

Crim. App. 2006)). Less drastic alternatives include questioning the jury about the extent of any prejudice if instructions alone do not sufficiently cure the problem. *Id.* at 885. If the movant for mistrial does not first request a lesser remedy, we will not reverse the trial court's judgment if the problem could have been cured by the less drastic alternative. *Id.*

"A defendant is entitled to a mistrial if the jury, after retiring to deliberate, receives other evidence adverse to the defendant." *Bustamante v. State*, 106 S.W.3d 738, 743 (Tex. Crim. App. 2003).[3] "In determining whether the evidence was 'received' by the jury, a court may consider how extensively the evidence was considered by the jury and whether the jury was given an instruction to disregard." *Id.* If the trial court gives an instruction to disregard that is found to be effective, "it is as though the evidence was never 'received' by the jury." *Id.* To determine whether evidence was detrimental or adverse, we consider its character in light of the issue before the jury rather than its actual effect. *Garza v. State,* 630 S.W.2d 272, 274 (Tex. Crim. App. [Panel Op.] 1981); *Reed v. State*, 841 S.W.2d 55, 59 (Tex. App.—El Paso 1992, pet. denied).

### 3. Analysis

The jury timely sought guidance from the trial court concerning the juror's disclosure, and they were provided a proper instruction to disregard the information with a reference to the appropriate section of the jury charge. There is no evidence in the record indicating that the jury was unable to follow the trial court's instruction. Under

---

[3] In *Bustamante v. State*, 106 S.W.3d 738, 743 (Tex. Crim. App. 2003), the court of criminal appeals applied Texas Rule of Appellate Procedure 21.3(f) and interpretive case law in its review of a motion for mistrial. Rule 21.3(f) requires that a new trial be granted "when, after retiring to deliberate, the jury has received other evidence." TEX. R. APP. P. 21.3(f).

these facts, we conclude that the trial court's curative instruction was an effective alternative to the extreme remedy of a mistrial. Therefore, it is as though the evidence was never "received" by the jury. *See Bustamante*, 106 S.W.3d at 745 (holding that exhibit improperly submitted to the jury was not "received" by the jury where jurors recognized a potential problem, sought guidance from the trial court, and received an instruction to disregard the exhibit); *Cuellar v. State*, 943 S.W.2d 487, 492 (Tex. App.—Corpus Christi 1996, pet. denied) (concluding "other evidence" of the defendant's gang affiliation was not received by the jury due to corrective instruction by another juror that information should not be considered).

Further, appellant's counsel did not pursue the alternative of questioning the jury. The party alleging juror misconduct should initiate juror questioning. *Ocon*, 284 S.W.3d at 886-87. "Questioning jurors who allegedly participated in misconduct is a less drastic remedy than a mistrial." *Id.* at 886. Because a less drastic remedy was available to cure any prejudice that may have resulted from the juror's disclosure, we will not reverse the judgment of the trial court.

The trial court did not abuse its discretion in overruling appellant's motion for mistrial on the basis of the jury's receipt of other evidence.

**B. Impartial Jury**

Appellant further argues under his first issue that the juror's personal knowledge regarding appellant's residence deprived appellant of his right to an impartial jury. We disagree.

### 1. Applicable Law

An accused in a criminal prosecution has the right to a fair trial by an impartial jury. *See* TEX. CONST. art. I, § 10. When a juror "'withholds material information during the voir dire process, the parties are denied the opportunity to exercise their challenges, thus hampering their selection of a disinterested and impartial jury.'" *Franklin v. State*, 138 S.W.3d 351, 354 (Tex. Crim. App. 2004) (quoting *Salazar v. State*, 562 S.W.2d 480, 482 (Tex. Crim. App. 1978)). To obtain a new trial based on juror misconduct, the defendant must show that the juror withheld material information during voir dire despite the defendant's due diligence. *Id.* at 355–56; *see Armstrong v. State*, 897 S.W.2d 361, 363–64 (Tex. Crim. App. 1995). Diligence requires that counsel ask questions calculated to bring out information that might indicate a juror's inability to be impartial and truthful. *Armstrong*, 897 S.W.2d at 363–64. In the absence of such questions, material information that a juror fails to disclose is not really "withheld." *Id.* at 364. Counsel must ask specific questions, not rely on broad ones, to satisfy this obligation and must ask follow-up questions after a potential bias is discovered. *Gonzales v. State*, 3 S.W.3d 915, 917 (Tex. Crim. App. 1999).

### 2. Analysis

In reviewing the voir dire record, we find no instance where appellant's counsel questioned the venire panel concerning their knowledge of appellant's address. Appellant cannot demonstrate that the juror "withheld" information because appellant's counsel did not ask questions calculated to reveal the information appellant claims indicates impartiality or bias. *See id.* at 917–18 (holding that juror did not "withhold"

information where "defense counsel did not ask any oral questions in an effort to verify whether prospective jurors who returned juror questionnaires had been involved in criminal cases as that question was meant to be understood"). Therefore, there exists no misconduct warranting a reversal. *See id.* The cases cited by appellant are inapposite, because they each involve a juror's failure to disclose material information in response to specific questions posed in voir dire. *See Franklin,* 138 S.W.3d at 352 (after stating that she knew none of the parties involved in trial, juror informed court that she was the assistant leader of victim's Girl Scout troop and that her daughter was also in the victim's troop); *Von January v. State*, 576 S.W.2d 43, 44 (Tex. Crim. App. 1978) (juror failed to disclose that he knew the deceased victim's family although asked directly during voir dire); *Salazar,* 562 S.W.2d at 481–82 (when asked whether he had been a witness in a criminal case, juror failed to disclose that he had been a prosecution witness in a criminal proceeding where he was eyewitness to sexual assault of his daughter).

## C. Summary

Viewing the evidence in the light most favorable to the trial court's ruling, we conclude the trial court's failure to declare a mistrial was not an abuse of discretion. *See Ocon*, 284 S.W.3d at 884. We overrule appellant's first issue.

### III. JURY CHARGE ERROR

By his second issue, appellant argues that the trial court "committed reversible jury charge error." Under two sub-issues, appellant maintains he was entitled to (1) a jury determination of the "applicability of the quarterly verification requirement" and (2) an affirmative defense instruction on mistake of law.

9

**A.      Standard of Review**

Appellate review of alleged jury charge error involves a two-step process.   *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994).    Initially, we determine whether error occurred, and, if so, we evaluate whether sufficient harm resulted from the error to require reversal.    *Id.* at 731-32.    Where a timely objection is made at trial, jury charge error requires reversal if the error was "calculated to injure the rights of defendant," which means there must be "some harm" to the accused.    TEX. CODE CRIM. PROC. ANN. art. 36.19; *see also Abdnor*, 871 S.W.2d at 731–32.    But when the error is not so preserved, the harm must be "egregious" before reversal is proper.    *Id.*    An egregious harm is one that goes to the "very basis of the case."    *Druery v. State*, 225 S.W.3d 491, 504 (Tex. Crim. App. 2007).

**B.      Quarterly Verification Requirement**

By his first sub-issue, appellant argues that he was "entitled to a jury determination of the applicability of the quarterly verification requirement."    Specifically, appellant maintains there was a fact issue regarding whether he was subject to supervision or confinement on September 1, 1999, which impacts whether the 1999 amendments excused him from the quarterly registration requirement.    This issue presents a matter of statutory construction.

**1.   Applicable Law**

When this court interprets statutes, "we seek to effectuate the 'collective' intent or purpose of the legislators who enacted the legislation."    *Reynolds v. State*, 423 S.W.3d 377, 382 (Tex. Crim. App. 2014) (citations omitted).    We first look at the language of the

statute to discern the fair, objective meaning of the text at the time of its enactment. *Id.* Where the statute is clear and unambiguous, we give effect to its plain meaning, unless doing so would lead to absurd results that the legislature could not have intended. *Id.* If the statute is ambiguous, we may then look beyond the plain text and consider additional factors. *Id.*

### 2. Analysis

The 1999 amendments to the sex offender registration statute extended the quarterly registration requirement to those persons who have "been convicted two or more times" of a sexually violent offense. Act of Sept. 1, 1999, 76th Leg., ch. 1415, § 15, 1999 Tex. Gen. Laws 4838. The "savings clause" to the 1999 amendments limited the Act's application to those who were confined or under supervision as of September 1, 1999. Act of Sept. 1, 1999, 76th Leg., ch. 1415, § 29, 1999 Tex. Gen. Laws 4842. Appellant argues there was a fact issue concerning whether he was subject to the quarterly registration requirement because there was conflicting evidence regarding appellant's discharge date. However, we conclude the 2001 amendments[4] extended the quarterly registration requirement to appellant, regardless of his discharge date. *See* Act of Sept. 1, 2001, 77th Leg., ch. 211, § 19, 2001 Tex. Gen. Laws 405.

The plain language of the transition clause in the 2001 amendments provides for application of the law to those persons required to register as a sex offender "before, on, or after" September 1, 2001. *Id.* Appellant, who was required to register as a sex

---

[4] The 2001 amendments further clarified that the quarterly registration requirement applies to offenders with two or more qualifying convictions regardless of whether the convictions were entered on different dates or whether the offenses arose out of the same criminal transaction. Act of Sept. 1, 2001, 77th Leg., ch. 211, § 9, 2001 Tex. Gen. Laws 401.

11

offender before September 1, 2001, is clearly within the class of persons identified by the legislation. The 2005 amendments merely renumbered article 62.06 as 62.058. *See* Act of September 1, 2005, 79th Leg., ch. 1008, art. 1, § 1.01, 2005 Tex. Gen. Laws 3402. Therefore, there is no fact issue concerning the application of article 62.058's quarterly reporting requirement, and the trial court did not err in refusing to submit the issue to the jury. *See Reynolds*, 423 S.W.3d at 382 (interpreting similar language in the 2005 reenactment of Chapter 62, the court of criminal appeals noted "[t]here is no language within the statute that indicates the [earlier] 'savings clause' was to be retained. The plain language of the statute also does not indicate that 'person[s] subject to Chapter 62' means only those individuals who had been subject to it prior to the amendments . . . and we see no reason to read this meaning into it.")

## C.    Mistake of Law Instruction

By his second sub-issue, appellant argues that "the changes in the law and resulting confusion established a bona fide 'mistake of law.'" During the charge conference, appellant's counsel requested a mistake of law defense because of appellant's reliance on statements from various agencies "including the probation department from Nueces County [telling appellant] that he was an annual registrant." The trial court denied the request.

### 1.  Applicable Law

A defendant is entitled to a mistake of law instruction if the defendant reasonably believed the conduct charged did not constitute a crime, and he acted in reasonable reliance upon:

12

(1) an official statement of the law contained in a written order or grant of permission by an administrative agency charged by law with responsibility for interpreting the law in question; or

(2) a written interpretation of the law contained in an opinion of a court of record or made by a public official charged by law with responsibility for interpreting the law in question.

TEX. PENAL. CODE ANN. § 8.03(b). The defendant has the burden of producing sufficient evidence to raise a defensive issue. *Riddle v. State*, 888 S.W.2d 1, 6 (Tex. Crim. App. 1994). The instruction is not required if the evidence viewed in the light most favorable to the defendant does not raise the issue. *Dyson v. State*, 672 S.W.2d 460, 463 (Tex. Crim. App. 1984).

## 2. Analysis

The record reflects appellant may have been notified by law enforcement agencies that he was required to report annually, including upon his release from jail on March 22, 2010. The uncontroverted testimony at trial, however, further reflects that, on the following three occasions appellant reported to CCPD, he was expressly notified by CCPD personnel that he was required to register every ninety days, including June 22, 2010, the last day he reported prior to his arrest. Appellant did not testify at trial; therefore, there is no evidence in the record concerning whether he relied upon prior agency representations.

Viewing the evidence in the light most favorable to appellant, we conclude appellant failed to produce sufficient evidence that he reasonably believed the conduct charged did not constitute a crime. *See* TEX. PENAL. CODE ANN. § 8.03(b); *Riddle*, 888 S.W.2d at 6; *Dyson*, 672 S.W.2d at 463. Further, appellant presented no evidence that

13

he relied on an official statement of the law by an administrative agency charged with the responsibility for interpreting the law. *See id.* The trial court did not err in denying a mistake of law instruction.

**D.      Summary**

We conclude the trial court did not commit jury charge error; therefore, we need not determine whether sufficient harm resulted requiring reversal. *See Abdnor*, 871 S.W.2d at 731. We overrule appellant's second issue.

## IV. EX POST FACTO PROHIBITION

By his third issue, appellant argues the retroactive application of the quarterly verification requirement violates the ex post facto prohibition of the state and federal constitutions. Specifically, appellant maintains "the quarterly verification requirement . . . increas[es] the punishment for his prior [indecency with a child] convictions." We disagree.

**A.      Standard of Review and Applicable Law**

We review the constitutionality of a criminal statute de novo, as a question of law. *Moloney v. State*, 294 S.W.3d 613, 626 (Tex. App.–Houston [1st Dist.] 2009, pet. ref'd). We presume the statute is valid and the legislature did not act unreasonably or arbitrarily. *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002). The party challenging the statute has the burden to establish its unconstitutionality. *Id.* We must uphold the statute if we can apply a reasonable construction that will render it constitutional. *Ely v. State*, 582 S.W.2d 416, 419 (Tex. Crim. App. [Panel Op.] 1979).

14

Both the United States and Texas Constitutions prohibit Texas from applying any ex post facto law. U.S. CONST. art. I, § 10, cl. 1; TEX. CONST. art. I, § 16. Texas interprets the proscription against ex post facto laws in the Texas Constitution to have the same meaning as the proscription against ex post facto laws found in the United States Constitution. *Grimes v. State*, 807 S.W.2d 582, 586 (Tex. Crim. App. 1991); *Young v. State*, 358 S.W.3d 790, 805 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). "An ex post facto law: (1) punishes as a crime an act previously committed which was innocent when done; (2) changes the punishment and inflicts a greater punishment than the law attached to a criminal offense when committed; or (3) deprives a person charged with a crime on any defense available at the time the act was committed." *Rodriguez*, 93 S.W.3d at 66 (citing *Collins v. Youngblood*, 497 U.S. 37, 42–44 (1990)).

We apply the "intent-effects" test to determine whether the application of a statute constitutes punishment. *Id.* at 67. A court must first determine whether the legislature intended the statute to impose a criminal punishment. *Id.* (citing *Hudson v. United States*, 522 U.S. 93, 99 (1997)). If it is the legislature's intent to establish a civil remedy, we look to the factors articulated in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168–69 (1963), to determine whether the effects of a statute are criminally punitive. *Id.* at 67–68. Under *Kennedy*, we consider whether the regulation: (1) involves an affirmative disability or restraint; (2) has been traditionally regarded as punishment; (3) applies only on a finding of scienter; (4) promotes the traditional aims of punishment; (5) applies to behavior that is already a crime; (6) has a rational connection to a non-punitive purpose; and (7) appears excessive in relation to this purpose. 372 U.S. at 168–69.

15

**B.    Analysis**

The State does not contest the retroactive application of the quarterly registration requirement, and appellant does not argue that the legislature intended for the requirement to be criminal punishment.   Therefore, we must determine whether the effects of the statute are criminally punitive.

The court of criminal appeals has held on two occasions that the sex offender registration statute is non-punitive in effect.   *See Rodriguez*, 93 S.W.3d at 79; *Ex Parte Robinson*, 116 S.W.3d 794, 798 (Tex. Crim. App. 2003).   However, those cases did not involve the application of the quarterly registration requirement.

In *Rodriguez,* the court thoroughly analyzed the annual reporting requirement of the 1997 amendments to the sex offender registration statute utilizing the seven *Kennedy* factors and concluded that the statute was non-punitive.   93 S.W.3d at 69–79.   The court reviewed the frequency of the in-person reporting requirements and public notification provisions in relation to whether the statute was an "affirmative disability or restraint," and concluded that "although registration and notification impose a burden upon those required to register, it does not impose an affirmative disability or restraint as the term is commonly understood."   *Id.* at 71.

In *Ex Parte Robinson*, the defendant argued that the registration requirements constituted cruel and unusual punishment.   116 S.W.3d at 797.   Relying on its decision in *Rodriguez*, the court of criminal appeals concluded the 1999 version of the statute was non-punitive, and, therefore, did not constitute cruel and unusual punishment.   *Id.* at 798.

In *Smith v. Doe*, the United States Supreme Court considered for the first time whether a sex offender registration law violated the ex post facto clause of the federal constitution. 538 U.S. 84, 92 (2003). Applying the *Kennedy* factors, the Court reviewed the Alaska sex offender registration statute which, like the Texas statute, required an offender who was convicted two or more times to verify information quarterly (although not in person). *Id.* at 97–105. In analyzing whether the reporting requirements constituted an "affirmative disability or restraint," the Court rejected the argument that the registration system is parallel to probation or supervised release. *Id*. at 101. The Court explained:

> [O]ffenders subject to the Alaska statute are free to move where they wish and to live and work as other citizens, with no supervision. Although registrants must inform the authorities after they change their facial features . . . borrow a car, or seek psychiatric treatment, they are not required to seek permission to do so. A sex offender who fails to comply with the reporting requirement may be subjected to a criminal prosecution for that failure, but any prosecution is a proceeding separate from the individual's original offense . . . It suffices to say the registration requirements make a valid regulatory program effective and do not impose punitive restraints in violation of the *Ex Post Facto* Clause.

*Id.* at 101–02. The Court concluded that "[t]he Act is non-punitive, and its retroactive application does not violate the *Ex Post Facto* Clause." *Id.* at 105–06.

The only difference between the statute before the court of criminal appeals in *Reynolds* and the statute as applied to appellant is the frequency of the reporting requirement—quarterly vs. annually. However, like the Alaska statute, an individual subject to quarterly registration in Texas may choose where to live and work without supervision. *Id.* at 101–02. We conclude that the quarterly reporting requirement does not constitute an "affirmative disability or restraint," and, in light of Texas precedent, we

17

conclude that the sex offender registration statute is non-punitive in effect. *See Rodriguez*, 93 S.W.3d at 79; *Ex Parte Robinson*, 116 S.W.3d at 798. As a result, the retroactive application of the quarterly reporting requirement does not violate the ex post facto clause of the state and federal constitutions. We overrule appellant's third issue.

## V. PLEA PROCEEDINGS

By issues four through seven, appellant alleges error concerning the original plea proceedings in trial cause numbers 09-CR-1006-G and 09-CR-1082-G. Specifically, appellant argues: (1) his conviction for theft is not supported by the evidence; (2) his conviction of theft and unauthorized use of a motor vehicle violates the double jeopardy clause of the federal constitution; (3) his sentences in trial cause number 09-CR-1082-G are void because they were improperly enhanced; and (4) his convictions for three counts of violating the registration requirements is not supported by sufficient evidence and constitutes double jeopardy. We conclude appellant has waived these issues, but we will review the judgments to determine whether they are void or a double jeopardy violation is clearly apparent from the face of the record.

## A. Waiver

A defendant must raise issues relating to the original plea proceeding, including evidentiary sufficiency, only in a timely appeal taken when deferred-adjudication community supervision is first imposed. *Perez v. State*, 424 S.W.3d 81, 86 (Tex. Crim. App. 2014); *Manuel v. State*, 994 S.W.2d 658, 661–62 (Tex. Crim. App. 1999); *see also Wiley v. State*, 410 S.W.3d 313, 319 (Tex. Crim. App. 2013) ("An appellant will not be permitted to raise on appeal from the revocation of his community supervision any claim

that he could have brought on an appeal from the original imposition of that community supervision."). There are two limited exceptions to the general rule that the original plea cannot be attacked on an appeal of the revocation proceedings: the "void judgment" exception; and the "habeas corpus" exception. *See Nix v. State*, 65 S.W.3d 664, 667 (Tex. Crim. App. 2001).

Further, a "defendant in a criminal prosecution for any offense may waive any rights secured him by law." TEX. CODE CRIM. PROC. ANN. art. 1.14. "A waiver of the right to appeal made voluntarily, knowingly, and intelligently will prevent a defendant from appealing without the consent of the trial court." *Ex parte Broadway*, 301 S.W.3d 694, 697 (Tex. Crim. App. 2009).

## B.    Sufficiency Challenge

Appellant was required to raise the issue of sufficiency of the evidence supporting his plea in a timely appeal following the original plea proceedings. *See Perez,* 424 S.W.3d at 86. Because appellant failed to do so, our inquiry is limited to determining whether the judgments are void because of a complete lack of evidence to support the conviction. *See Nix,* 65 S.W.3d. at 668 ("For the judgment to be void, the record must show a complete lack of evidence to support the conviction, not merely insufficient evidence."). Appellant's guilty pleas in trial cause numbers 09-CR-1006-G and 09-CR-1082-G were accompanied by a judicial confession covering all of the elements of the charged offenses. *See* TEX. CODE CRIM. PROC. ANN. art. 1.15. This evidence is sufficient to support the convictions. *See Menefee v. State*, 287 S.W.3d 9, 13 (Tex. Crim. App. 2009) ("[S]o long as such a judicial confession covers all of the elements of the

19

charged offense, it will suffice to support the guilty plea."). Therefore the original judgments are not void.

We also observe that appellant specifically waived his right to appeal in trial cause numbers 09-CR-1006-G and 09-CR-1082-G. In both causes, appellant signed a written waiver of his right to appeal. Appellant also signed acknowledgments of receipt of a copy of the "Trial Court's Certification of Defendant's Right of Appeal," which noted that this "is a plea-bargain case, and the defendant has NO right of appeal." (emphasis in original). Appellant does not challenge whether his waiver was made voluntarily, knowingly, and intelligently. Therefore, appellant may not now raise issues concerning the original judgments.

## C. Double Jeopardy

Appellant raises his double jeopardy challenge for the first time on appeal. In general, a defendant must preserve a double jeopardy objection at or before the time the issue of his guilt is submitted to the finder of fact. *See Gonzalez v. State*, 8 S.W.3d 640, 642 (Tex. Crim. App. 2000); *King v. State*, 161 S.W.3d 264, 267 (Tex. App.—Texarkana 2005, pet. ref'd). A defendant is excused from the preservation requirement only when (1) the undisputed facts show the double jeopardy violation is clearly apparent on the face of the record, and (2) enforcement of the usual rules of procedural default serves no legitimate state interest. *Langs v. State*, 183 S.W.3d 680, 687 (Tex. Crim. App. 2006).

The protection against double jeopardy includes the protection against multiple punishments. *Ex parte Benson*, 459 S.W.3d 67, 71 (Tex. Crim. App. 2015). "In the multiple-punishment context, the double-jeopardy clause prevents a court from

20

prescribing greater punishment than the legislature intended." *Id.* "Where two distinct statutory provisions are at issue, the offenses must be considered the same under both an 'elements' analysis and a 'units' analysis for a double-jeopardy violation to occur." *Id.* Under the elements analysis, the question is "'whether each provision requires proof of a fact which the other does not.'" *Id.* at 72 (quoting *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). Under Texas law, the same-elements test is governed by the cognate-pleadings approach which requires "comparing the elements of the greater offense as pleaded to the statutory elements of the lesser offense." *Id.* If the two offenses have different elements, "the judicial presumption is that the offenses are different for double-jeopardy purposes and that cumulative punishment may be imposed." *Id.* This presumption is rebutted by a showing that the legislature clearly intended only one punishment. *Id.* (citing *Ex Parte Ervin*, 991 S.W.2d 804, 814 (Tex. Crim. App. 1999) (setting out non-exclusive list of factors to consider in determining whether legislature intended only one punishment)).

The elements analysis is a legal question and does not depend on evidence offered at trial. *Hall v. State*, 225 S.W.3d 524, 535 (Tex. Crim. App. 2007). If the elements are legally the same, we must then review whether they are factually the same by determining the allowable unit of prosecution. *Ex Parte Benson*, 459 S.W.3d at 73–74. The allowable unit of prosecution of an offense turns on statutory construction and usually requires ascertaining the gravamen of the offense. *Id.*

21

### 1. Theft and Unauthorized Use of a Motor Vehicle

Appellant argues that a double jeopardy violation is clearly apparent on the face of the record, because he was sentenced for the same act for Theft and Unauthorized Use of a Motor Vehicle.   We disagree.

Because appellant was sentenced under two distinct statutory provisions, we must first determine whether the offenses have the same elements using the cognate-pleadings approach.   *Ex Parte Benson*, 459 S.W.3d at 72.   The theft indictment alleged that appellant unlawfully appropriated a boat by acquiring or otherwise exercising control over the boat without the effective consent of the owner and with the intent to deprive the owner of the property.   *See* TEX. PENAL CODE ANN. § 31.03.   A person commits the lesser offense of unauthorized use of a motor vehicle if "he intentionally or knowingly operates another's boat, airplane, or motor-propelled vehicle without the effective consent of the owner."   *See* TEX. PENAL CODE ANN. § 31.07.

Theft requires an appropriation of some property, while the latter offense requires the operation of a motor vehicle.   Therefore, each offense requires proof of a fact which the other does not.   *Id.* at 73.   For instance, a defendant might steal a boat or automobile by having it towed, without ever operating the motor vehicle.   On the other hand, one could operate a motor vehicle without the consent of the owner, and later return it, without having committed theft.   *See State v. Houth*, 845 S.W.2d 853, 869 (Tex. Crim. App. 1992) (Benavides, J., concurring) (explaining that "crimes of Theft and Unauthorized Use of a Motor Vehicle are different inasmuch as the former requires an appropriation of some property, not necessarily a vehicle, while the latter specifically requires operation of a

22

motor vehicle"); *see also Brady v. State*, 14-98-00424-CR, 2001 WL 459719, at *3 (Tex. App.—Houston [14th Dist.] May 3, 2001, pet. dism'd) (mem. op.) ("The gravamen of unauthorized use is operating someone else's vehicle without consent, regardless of intent to deprive. In contrast, the gravamen of theft is intent to deprive, regardless of whether the vehicle is operated.")

Unauthorized use of a motor vehicle might be legally the same under the cognate-pleadings approach if the pleadings indicate that the manner of the motor vehicle's appropriation includes its operation. *See Ex Parte Jefferson*, 681 S.W.2d 33, 34 (Tex. Crim. App. 1984) (holding conviction of theft and unauthorized use of a motor vehicle constituted double jeopardy violation where defendant stole a truck and was later arrested for driving the same truck). However, the indictments in this case do not indicate the manner of appellant's appropriation of the boat. Because the offenses have different elements under the cognate-pleadings approach, a double jeopardy violation is not clearly apparent on the face of the record. *See Ex Parte Denton*, 399 S.W.3d 540, 544 (Tex. Crim. App. 2013) ("A double-jeopardy claim is apparent on the face of the trial record if resolution of the claim does not require further proceedings for the purpose of introducing additional evidence in support of the double-jeopardy claim.").

## 2. Sex Offender Registration Requirements

Appellant argues that his convictions for three counts of violating the registration requirements constitutes a double jeopardy violation.

In trial cause number 09-CR-1006-G, appellant was indicted for three counts of failure to comply with sex offender registration requirements. Specifically, appellant was

23

charged with: (1) failing to report in person his anticipated moving date or change of address in the registration form; (2) failing to report a change of employment or a change of address in person and verify registration information; and (3) failing to report a change of employment, job status, or a change of work location within a seven day period after the date of the change.

Each of the counts in the indictment constitute separate violations of Chapter 62 of the Texas Code of Criminal Procedure. A person required to register must: report an anticipated change of address, TEX. CODE OF CRIM. PROC. art. 62.055(a); report within seven days after the move, *id.*; and report a change in job status within seven days, *id.* at art. 62.057. Because the offenses do not involve the same elements, we conclude the record does not clearly reflect a double jeopardy violation. Further, we note that the legislature has clearly expressed its intent that each violation be punished separately. *See id.* 62.102(a) ("[A] person commits an offense if the person is required to register and fails to comply with any requirement under this chapter.").

**D.     Sentence Improperly Enhanced**

Appellant argues that his sentences in trial cause number 09-CR-1082-G were improperly enhanced using his prior convictions for indecency with a child and failure to comply with registration requirements, because the conviction of the former was an element of the latter conviction.

A sentence outside the prescribed punishment range is void. *Baker v. State*, 278 S.W.3d 923, 926 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd). A defect which renders a sentence void may be raised at any time. *Ex parte Beck*, 922 S.W.2d 181,

24

182 (Tex. Crim. App. 1996). "The use of a prior conviction to prove an essential element of an offense bars the subsequent use of that prior conviction in the same indictment for enhancement purposes." *Musgrove v. State*, 425 S.W.3d 601, 614 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (citing *Wisdom v. State*, 708 S.W.2d 840, 845 (Tex. Crim. App.1986)). This would prohibit the use of appellant's indecency conviction both as an element of failure to register and as a punishment enhancement for the same offense. However, this is not what occurred.

While the indecency conviction was an element of appellant's first conviction for failure to register, neither conviction was an element of the offenses of theft and unauthorized use of a motor vehicle. Therefore, appellant's sentences were not improperly enhanced. *See Steels v. State*, 858 S.W.2d 636, 638 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd) (holding it was permissible for conviction used for enhancement to have been an element of another conviction used for that purpose).

## E. Summary

We conclude that appellant waived issues four through seven by not timely appealing from the judgments imposing community supervision-deferred adjudication, and that he has voluntarily, knowingly, and intelligently waived his right to appeal the judgments. The judgments are not void, and a double jeopardy violation is not clearly apparent on the face of the record. We overrule issues four through seven.

## VI. CONCLUSION

We affirm the trial court's judgment in each cause.

GREGORY T. PERKES
Justice

Dissenting Memorandum Opinion
by Justice Gina M. Benavides.

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
24th day of September, 2015.